THE PEOPLE vs. LAMBERT.

———•-•-•———

## The People vs. Robert T. Lambert.

Parol evidence of the contents of a written document can not be received, except where the original is lost or destroyed. That the document belongs in a public office, and can not be removed, does not vary the rule in this particular.

The statute laws of other States must be proved by copies, authenticated in some mode recognized by law.

Where a witness who testified that he had been a policeman and constable in New Jersey, and did not swear to any general knowledge of the laws of that State, but said he had, on account of a difficulty with his wife, looked into those laws, was allowed to testify what the written laws of New Jersey were in regard to marriage;—*Held*, That it was error in the Court to admit such evidence, either in proof of what was in the law or in explanation thereof.

Where, in a prosecution for bigamy, the first marriage is alleged to have taken place in another State, proof not only of a marriage in fact, but of a valid marriage, according to the laws of that State, must be made by the prosecution. And there being evidence in the case that the law of that State, on the subject of marriage, is in statute form, it can not be presumed, against the innocence of the defendant, that such statute law is like our own.

A certificate of marriage, signed only by the minister or officiating officer, or the record thereof, can not avail as evidence of the marriage, in criminal proceedings, where defendant is entitled to be confronted with the witnesses against him.

The record made in another State of a certificate of marriage, which certificate bears no date, and neither declares where the marriage took place, nor shows where the minister who performed the ceremony resided, and which appears to have been recorded nearly three years after the alleged marriage, and after a prosecution for bigamy on a subsequent marriage has been commenced, is entitled to no consideration whatever, and is not admissible as evidence for any purpose.

A defendant can not be convicted of bigamy where the only evidence of the first marriage is proof of the cohabitation of the parties as man and wife, and their statements that such marriage had taken place.

*Heard June 3d and 4th. Decided July 13th.*

Case reserved from the Wayne Circuit.

Defendant was convicted upon indictment charging that, on the first day of January, 1855, at Bergen Hill, in the

State of New Jersey, he married one Nancy J. Mulholland, and that afterwards, and while the said Nancy J. was still living, on the third day of August, 1857, at Detroit, in the State of Michigan, he married one Mary Jane Brown.

The Prosecuting Attorney commenced the evidence by introducing Stephen W. Treadwell, to prove the alleged first marriage of the defendant to Nancy J. Mulholland, by evidence of his confession, and of their cohabitation, reputation, and conduct as man and wife; to which the defendant objected, as incompetent and insufficient. But the objection being overruled by the Court, and the testimony admitted, said Treadwell testified that on the 2d or 3d day of January, 1855, at the house of one Mrs. Graham, in Jersey City, he was present at a meeting of the parties, when the defendant told witness that he had been married on the preceding New Year's night, by a Mr. Adams, at Bergen Hill, to said Nancy J. Mulholland; that said Nancy J. was also present and exhibited what purported to be a marriage certificate, and talked freely about her said marriage in the presence and hearing of defendant, who joined in the conversation. Witness also testified that Bergen Hill is in Hudson county, and State of New Jersey, and that said Adams was a Methodist clergyman, then residing at said Jersey City, in the neighborhood of, and among, her relatives and friends; that the defendant also told him, that one Mr. Bradshaw and one Henrietta Graham were present at the marriage; that they (the prisoner and said Nancy J.) afterwards cohabited, were reputed, and generally conducted towards each other, as man and wife; that said Nancy J., said Adams, said Bradshaw, and said Henrietta Graham are still living and residing in Jersey City aforesaid.

Said Treadwell further testified, that he was, and had been for several months, a constable in Jersey City, and during many years, at various times, and for various periods, had been one of the police and night watch in said city; but he did not testify, nor was it shown, that he was a person

THE PEOPLE vs. LAMBERT.

experienced and skilled in the laws of New Jersey; where-upon the Prosecuting Attorney offered to prove by said wit-ness the laws of New Jersey on the subject of marriage; to which the defendant objected. But the objection was over-ruled by the Court; and said Treadwell then testified, that he had examined the laws of New Jersey on the subject of marriage, on account of having some difficulty with a former wife of his own; that the laws of New Jersey require that a minister or clergyman should perform the ceremony of marriage; that a certificate of the marriage must be recorded, but he did not know within what period, nor whether it must be recorded within any particular period, and that he believed no witnesses to the ceremony were required; and said witness' aforesaid testimony as to the laws of New Jersey, was as to the laws of New Jersey in force a short time before the trial of this cause; and he did not testify as to any knowledge of what the laws were at the time of the alleged first marriage of the defendant. The prose-cution introduced no other evidence as to the laws of New Jersey.

The Prosecuting Attorney then offered further to prove said first marriage, by a document purporting to be a copy of the record of the certificate of marriage of one Robert T. Lambert to one Nancy J. Mulholland, in the office of the clerk for the county of Hudson, and State of New Jer-sey, which, by the minute of such record, had been recorded after the arrest of the defendant on the charge set forth in the indictment, and four days before the finding of the same. Said recorded certificate bears no date, and it was not shown when the same was made or given to either of the parties named therein, otherwise than that a paper, pur-porting to be a certificate, was in the possession of said Nancy about two days after the said marriage, but there was no proof as to whether it was the same certificate as that recorded. It did not appear by said recorded certifi-cate, nor was it otherwise shown, at what place or in what

State the marriage .therein certified was solemnized; nor was there any .evidence to identify the parties to said marriage therein named as being the same persons as the defendant and said Nancy J. Mulholland, referred to by said witness Treadwell; nor was there any evidence to show what the laws of New Jersey required to be stated in a marriage certificate, or to show that the county clerk of said Hudson county had a right to record a marriage certificate, which was without˙ date, and which did not show that the marriage certified was solemnized within the State of New Jersey; but there was evidence to show that the laws required the county clerk to record certificates of marriage; nor was there any evidence to show what faith or credit, or force and effect, would be given to said certified copy of record, by law and usage, in the courts of New Jersey. Said copy of record was duly certified, according to the Act of Congress of March 27th, 1804, and was offered in evidence as admissible under said Act; to which the defendant objected, but the objection was overruled by the Court, and the same was read to the jury. Said copy of record and the minute of such record were as follows:

"This is to certify, that Robert T. Lambert, of Hudson, in the State of New Jersey, and Nancy J. Mulholland, of Jersey City, in the State of New Jersey, were by me joined together in Holy Matrimony, on the first day of January, in the year of our Lord one thousand eight hundred and fifty-five. (Signed) E. W. ADAMS, Minister of the Gospel." "In presence of" "Received in the office, and recorded Sept. 12th, 1857."

The Prosecuting Attorney then introduced John Goodyear, as a witness to prove the first marriage by the defendant's confession; to which the defendant objected. And the objection being overruled by the Court, said Goodyear testified, that in a conversation between himself and defendant, he, the defendant, spoke of his first marriage and former wife, and said, that he had a right to leave her, and that it

was not a valid marriage according to the laws of New Jersey.

The second marriage of the defendant was fully proven, as alleged in the indictment.

The counsel for the defendant asked the Court to instruct the jury as follows:

1. That said Treadwell was not a competent witness to prove the laws of New Jersey.

2. That the laws of New Jersey not having been produced or read, but having been, like other facts in the case, proven by the testimony of a witness, it is for the jury to determine from the evidence what the law of that State was at the time of the alleged first marriage of the defendant, in respect to the mode of solemnizing it, and what it required to render such marriage legal and valid.

3. That the alleged first marriage of the defendant could not be held a legal and valid marriage by virtue of the common law; and if it were, it could not be so held in this case, without proof that the law of New Jersey then authorized marriages to be contracted and solemnized according to the forms of the common law.

4. That the copy of the record of the certificate of marriage produced from the State of New Jersey, and read to the jury, was not competent or legal proof of the alleged first marriage of the defendant.

5. That the Act of Congress of March 27th, 1804, does not apply to this case, and if it does, that it is in violation of the constitutional right of the defendant to be confronted on the trial by the witnesses against him.

6. That Congress has no power to determine what shall or shall not be evidence on the trial of criminals for offenses against the laws of this State, but such power is vested solely in the State of Michigan.

7. That neither evidence of the defendant's confession nor of cohabitation, reputation, and conduct of the parties, is such proof of a legal and actual marriage as the law requires

in this case, and that there was no competent and sufficient proof of the first marriage.

8. That the defendant's statement that his alleged first marriage was not valid according to the laws of New Jersey, was evidence in his favor of the invalidity of such marriage, and could not be rejected, as such, by the jury, unless they also rejected the other confessions made at the same time.

All of which said instructions the Court refused to give, and defendant excepted. The Court did instruct the jury as follows:

1. That said Treadwell was a competent witness to prove the laws of New Jersey on the subject of marriage, having examined and read the same; and it was not necessary to show that he was a person experienced and skilled therein, but that the jury would judge of the weight of his evidence.

2. That in determining whether the first marriage was an actual and valid marriage according to the laws of New Jersey, the jury were not confined to the evidence before them as to what those were, unless there was sufficient proof as to what those laws required; that, if said marriage was not proven to be an actual and valid marriage, according to those laws, as testified to by the witness Treadwell, and there was no sufficient proof as to what the laws required, they could then consider, whether such marriage was an actual and valid marriage according to the common law; that the Court would take judicial cognizance of the fact that the common law was in force in New Jersey on the subject of marriage, and the fact that marriage, if solemnized according to that law, was a valid and legal marriage, according to the laws of that State, and that the jury could so find.

3. That a copy record of marriage certificate produced from the State of New Jersey, was competent and legal proof of the first marriage, provided the identity of the prisoner and said Nancy was proven; also, that it was ad-

missible in evidence under said Act of Congress of March 27th, 1804.

4. That it was competent and sufficient in the case to prove the first marriage, by the confessions, cohabitation, and conduct of the parties, under all the circumstances proven as before mentioned, and that it was not necessary to produce the testimony of the minister to maintain them, or of any other persons who were present at the marriage and had actual knowledge of the same.

5. That the jury, in determining the first marriage by the defendant's confessions, though made at the same time, had a right to credit and receive any part thereof, and discredit and reject the other, according as they might believe the same to be true or false.

To each of which instructions the defendant excepted. A verdict of *guilty* having been rendered by the jury, the defendant, by his counsel, moved for a new trial, for the reason, That the Court erred in refusing, as above set forth, to give certain instructions to the jury; and also, that the Court erred in instructing the jury as to the law of the case, and especially in the manner above set forth.

And the questions arising on such motion were reserved by the Circuit Judge for the opinion of this Court.

*Buel & Morrow*, for defendant:

1. The laws of one State can be proved in another only as other foreign laws. — 1 *Greenl. Ev.* §§ 489, 504; 4 *Conn.* 517, 521; 6 *Conn.* 480; 2 *Wend.* 211.    And the written laws of a foreign State can not be proved by the parol testimony of witnesses. — 1 *Greenl. Ev.* §§ 487, 488; *Story Confl. L.* §§ 640 *to* 642; 2 *Cranch*, 237; 4 *Conn.* 517; 6 *Conn.* 480; 6 *Cranch.* 274; 3 *Fos. N. H.* 471, 496; 11 *Conn.* 407; 7 *Gill*, 377; 2 *Wend.* 411; 6 *Wend.* 475; 12 *Conn.* 384; 4 *Johns. Ch.* 520; 1 *Johns.* 385.

2. It was for the Court, and not for the jury, to decide what was the proper evidence of the foreign law, and to

judge and instruct the jury as to its applicability to the matters in controversy.—1 *Greenl. Ev.* § 486; *Story Confl. L.* § 638; 1 *Pa.* 383; 2 *Har. & J.* 193, 219; 4 *Conn.* 517; *Cowp.* 174; 18 *Conn.* 361; 10 *Ala.* 885.

3. The Court can take no judicial notice of the laws of a foreign country, but they must be proved as facts.—4 *Conn.* 517; 7 *Gill,* 393; 6 *Conn.* 480; 19 *Vt.* 382; 9 *Miss.* 3; 2 *Bibb,* 138; *Hard.* 163; *Breese,* 16. In the present case, there is evidence that marriage in New Jersey is regulated by statute, and this rebuts any presumption that it is regulated by the common law.

But any mere presumption of the validity of the first marriage, yields to the superior presumption which the law always raises against crime and in favor of innocence.—4 *Comst.* 237. If the first marriage was void, the indictment can not be sustained.—1 *Ros. Cr. Ev.* 309, 310; 2 *Greenl. Ev.* §§ 461, 462; *Jacob's Case,* 1 *Moody C. C.*

In proving a marriage abroad, it must appear that the ceremony was performed according to the foreign law.—1 *Ros. Cr. Ev.* 321. And it must be proved according to what would be proof of it where it took place.—6 *How.* 587; 10 *Watts,* 168.

4. The copy record certificate of marriage was not competent or legal proof of the first marriage. It was, of itself, of a suspicious character, and bore marks of manufacture for the purposes of this case. There was no proof that it was a legal record under the laws of New Jersey. Under the Act of Congress, the copy record is to have faith and credit as a *genuine* record, the same as it had by law and usage in New Jersey; and of such law and usage there was no evidence.

5. The admission of the copy record in evidence was in violation of the constitutional right of defendant to be confronted on the trial with the witnesses against him.

6. The Court below made the Act of Congress a rule for *admitting and giving effect* to evidence, when in fact it is only a rule or mode for *procuring* it.

7. In bigamy, marriage is not to be presumed, as in civil cases, from cohabitation, reputation, and conduct of the parties: a marriage in fact must be proven, and the mere confessions of the parties are not sufficient evidence of the marriage.— *Ros. Cr. Ev.* 309; 2 *Greenl. Ev.* §461; 4 *Burr.* 2057; 4 *Johns.* 52; 7 *Johns.* 314; 5 *Barb.* 214; 4 *Comst.* 237; 11 *Mass.* 92; 9 *Mass.* 492; 7 *Mass.* 48; 1 *Esp.* 353; 15 *Mass.* 163; 6 *Conn.* 446; 1 *Marsh.* 391; 6 *How.* 597.

The prisoner's confession, where the *corpus delicti* is not otherwise proven, is insufficient for conviction.—1 *Greenl. Ev.* §217; *Bur. Cir. Ev.* 498, 499; *Wills Cir. Ev.* 61; 15 *Wend.* 147; 16 *Wend.* 53; 5 *Halst.* 185; 6 *Hayw.* 455; *Whart. Am. Cr. L.* §683 (*Ed.* 1857).

8. The Court erred in refusing to instruct the jury that defendant's statement that the first marriage was not valid was evidence of the invalidity of such marriage, and could not be rejected as such by the jury unless they also rejected the other confessions made at the same time.    In order, in such a case, to reject a part of defendant's confession, there must be evidence to contradict the part rejected.

*J. M. Howard, Attorney General,* for the People:

1. Evidence that the party has acknowledged the fact of a former marriage, is admissible in cases of bigamy and *crim. con.*—8 *S. & R.* 159; *Riggs vs. Curgenon,* 2 *Wils.* 399.

In the case of *The People vs. Humphrey,* 7 *Johns.* 314, the Court rule that in prosecutions for bigamy the confessions of the accused are not sufficient evidence of the marriage, and rely upon *Morris vs. Miller,* 4 *Burr.* 2057; *Birt vs. Barlow, Doug.* 171.

In *Morris vs. Miller,* Lord Mansfield did determine that admissions of a marriage were inadmissible, or, rather, insufficient, in *crim. con.*; but it is evident from the report of the case, that the question arose under the English Marriage Act of 2 George II.    But in *Birt vs. Barlow,* he is manifestly disposed to relax the rule, and remarks that a marriage in fact, among particular sorts of dissenters, where the proof by

a register is impossible, may be proved otherwise. The reasoning of the Court, in 8 *S. & R.* places the question in its true light, and shows that the rule laid down by Lord Mansfield is not applicable to the state of society in the United States, however necessary it may have been in England; and, that to hold a party in a case of *crim. con.* to strict evidence of a marriage in fact, would be inconvenient, as tending to render the proof difficult, expensive, and in many cases impossible. And see *Clayton vs. Wardell,* 4 *Comst.* 230; *Jewell's Lessee vs. Jewell,* 1 *How.* 219; 2 *Kent Com.* 87, *Note* a.

2. The parol evidence given of the statutes of New Jersey, is no ground for setting aside the verdict. Proof of a law is addressed to the Court, and not to the jury; and the mode of proving the laws of one State in the courts of another, provided by the Act of Congress, does not exclude other modes. — 1 *Greenl. Ev.* § 489. It is the settled rule in England that the laws of a foreign country may be proved by a witness learned in that law, whether it be written or unwritten. — 1 *Greenl. Ev.* § 487, *Note* 2; 8 *Ad. & E.* 208; 61 *Eng. C. L.* 268.

3. The copy of the record of the marriage certificate was not incompetent. The ground of the exception taken to its admission was that it was not shown what faith and credit were given it by the laws of New Jersey.

In the absence of proof of any statutory declaration of the faith and credit due to it, we may properly inquire what faith and credit are due to it by the common law; and there seems to be no doubt that by this rule it was admissible, for the purpose at least of showing that such a certificat ewas there recorded; and if the counsel for the Government stopped at that point, and failed to identify the prisoner as one of the parties named therein, there was only a defect of proof, but no error committed by the Court. The record was at least as good as the original certificate, and the most that could have been objected to it was, that, of itself, and

without the testimony of the clergyman who signed it, it did not prove a marriage.

But the prisoner was not injured by this evidence; and though it be held erroneous, if there be competent evidence sufficient to sustain the verdict, a new trial will not be granted. — 3 *Johns. Cas.* 125; *Norris vs. Badger*, 6 *Cow.* 455; *Marquand vs. Webb*, 16 *Johns.* 92; *Tullige vs. Wade*, 3 *Wils.* 18; *Horford vs. Wilson*, 1 *Taunt.* 12; *Teynham vs. Tyler*, 6 *Bing.* 561; *Prince vs. Shepherd*, 9 *Pick.* 176.

The evidence of the first marriage in this case was abundant. The prisoner not only acknowledged to the witness Treadwell, that Nancy Mulholland was his wife; that he had been married to her three or four days before; but the witness testifies that the parties cohabited together as husband and wife, for a long time, in New Jersey. This evidence was sufficient to prove the first marriage, and was entirely uncontradicted and unimpeached; and had the marriage certificate been wholly omitted, the jury could not have found otherwise than that the prisoner was guilty. Under such circumstances, it is submitted that a new trial can be of no possible benefit to the prisoner.

CAMPBELL J.:

This case comes up from the Court below, upon questions arising on the trial, and objections to the charge. The defendant was indicted for bigamy. The second marriage was proven to have taken place in this State, and no questions arise upon it. The first marriage was alleged to have taken place in New Jersey. A witness named Treadwell, who testified that he had been a policeman and constable in New Jersey, and did not swear to any general knowledge of the laws of that State, but said he had, on account of a difficulty with his own wife, looked into those laws, was allowed to testify what the written laws of New Jersey were in regard to marriage; and an exception was taken to the reception of his testimony.

This brings up the inquiry how the statutes of sister States are to be proved?    Our statutes ( *Comp. L.* § 4315 ) have provided for their proof by the reception of printed copies; and the Act of Congress of 1790 has authorized their exemplification under the great seal of a State. That in one or the other of these methods such laws are easily accessible, no one doubts. But it is claimed there is no legal objection to proving them by parol. The general rule is well settled, that parol evidence of the contents of a written document can not be given. The exceptions are where the original is lost or destroyed. The fact that a paper or entry belongs in a public office, and can not be removed, has never been allowed to open the door to parol evidence. The reason of the law requires the best evidence to be produced which the nature of the case will admit of. And an exemplification in due form is the best legal method of proving the contents of a public record. Where it is provided, as under our laws, that such proof may be made by a printed copy, in addition to the mode pointed out by the Act of Congress, no reason which has been allowed to apply to proof of private documents by parol can be said to exist. And if parol evidence is admissible at all, it must be on some ground peculiar to the subject of foreign laws.

This subject has undergone some discussion, and the American authorities are quite uniform as to the mode of proof. In *Church vs. Hubbart*, 2 *Cranch*, 187, the question was examined, and it was held the best proof must be offered which the nature of the case would admit of; which must be a copy, either exemplified, or otherwise verified, by oath, or by some method regarded in law as of equal validity. Nothing but the impossibility of obtaining a copy—a case, as the Court remarks, not to be presumed among civilized nations — can excuse the non-production of such a copy. This decision, made in 1804, has been adhered to in many cases. Among them are : *Consequa vs. Willings, Pet. C. C.* 225; *Robinson vs. Clifford*, 2 *Wash. C. C.* 441. It is also

recognized as law in 1 *Greenl. Ev.* §§ 487–8; *Story Confl. L.* §§ 639, 640, 641. If our own government has in any case promulgated a foreign law or ordinance as authentic, that promulgation is sufficient proof.— *Talbot vs. Seeman,* 1 *Cranch,* 38. The unwritten law must, from the nature of things, be proved by parol evidence. In this State, our statutes permit that to be proved by parol, or by the books of reports.— *Comp. L.* § 4316. ·

The case of *Baron de Bode,* 8 *Q. B.* 208, is a recent English case, in which a French edict was allowed to be proved by the testimony of an advocate. It is not to be denied that the reasoning of the judges in that case has much force. The admission of the evidence was placed on the ground of its being a question of science, and being provable by experts like other scientific facts. Lord Denman observes: "Properly speaking, the nature of such evidence is, not to set forth the contents of the written law, but its effect, and the state of law resulting from it. The mere contents, indeed, might often mislead persons not familiar with the particular system of law: the witness is called upon to state what law does result from the instrument. I do not think that the case of treaties is applicable: there, no class of persons are so peculiarly conversant with the subject-matter, as to invest it with the character of a science." Coleridge J. adverts to the difficulty of understanding the written laws of foreign countries possessing a different jurisprudence, and Williams J. suggests the inability to obtain copies from the public authorities of those countries. Patterson J. dissenting, gives it as his opinion, that the written document should be proved by an exact copy, and that, if difficulties arise in expounding it, the true method is to call in the testimony of experts to make the exposition, but not to prove the contents of the law by them, nor to be satisfied with a mere statement of its conclusions, without knowing its language.

The opinion of Patterson J. is, we think, founded on better

reason than the decision of his associates.   There are certain-
ly very many statutes too clear to need explanation; and it
is far safer to examine legal witnesses upon the exposition of
statutes, than to trust to their unaided memory for proof of
all statutes in force.   In this country, at least, such a practice
would be very unsafe; and there are reasons growing out of
our peculiar federated system which would render it highly
inexpedient to adopt any such course in regard to the laws of
our sister States.   Within a century, most of them were under
the dominion of the same general common law system, and
their statutes are to be interpreted by similar rules.   All of
them are represented in Congress, and the laws of Congress
are supposed to be susceptible of interpretation by any tribu-
nal in the land.   In our territorial condition we were bound
by laws selected from all the old States, and our courts were
expected to pass upon them.   We have ready access to the
reported decisions of courts, which are the only authorized
exponents of their local statutes.   Cases must certainly be
rare in which the courts of one State can not comprehend
the statutes of another.   The chief difficulty would arise be-
tween States where one is possessed of a common law and
the other of a civil law system.   But in all cases it is safer
to have the written law as a guide, whether it needs ex-
pounding or not.

In this case, the witness offered would not have been com-
petent under either rule.   In regard to the law of marriage, his
means of knowing the law were those of any other citizen,
and no more.   Some English cases have gone very far in re-
ceiving the testimony of foreign residents concerning their
local law, but it is now very well settled that the witness
must be an *expert*.   In most cases, he must be a lawyer: in
some instances, a public officer or an ecclesiastic has been re-
ceived to prove the law in his special department.   The *Sussex
Peerage Case*, in the House of Lords (11 *Clark & Fin.* 85),
overruled all the cases which permitted other witnesses than
experts to be sworn on this subject.   Since then the courts

have followed that ruling. In *Vander Donckt vs. Thellusson*, 8 *M. G. & S.* 812, the Court say: "We must take it to be the law of England, that, in order to prove the law of a foreign country, there must be some special ground for believing that the person who is offered is more than ordinarily capable of speaking upon the subject"; and this is explained by saying further: "All persons, I think, who practice a business or profession which requires them to possess a certain knowledge of the matter in hand, are experts, so far as expertness is required." And in *Regina vs. Povey*, 14 *Eng. L. & Eq.* 549, which was a bigamy case, in which a woman had been allowed to testify to a marriage in fact by a minister in Scotland, and to the legality of it, the conviction was quashed by the Court of Criminal Appeal, who held the testimony insufficient, and said: "There may be certain cases, perhaps, in which it may not be necessary to have a lawyer to give evidence; but the Court is clearly of opinion that some witnesses conversant with the Scottish law of marriage should have been called on the part of the Crown." And in *Bristow vs. Sequeville*, 5 *Exch.* 275, a witness was rejected as incompetent who had studied the foreign law at a university, but had not practiced it.

The results which would flow from regarding persons with slight qualifications as experts, would be disastrous, and would often subject the administration of the law to just reproach. We think that the statutes of New Jersey should have been proved by copies; and that if they needed explanation, the witness Treadwell was not in a position which qualified him to expound them.

It is claimed by the prosecution that in the absence of proof to the contrary, the law of Michigan will be presumed to be the law of New Jersey. The cases of *Rue High, Appellant*, 2 *Doug. Mich.* 515; of *Crane vs. Hardy*, 1 *Mich.* 56; and *Jones vs. Palmer*, 1 *Doug. Mich.* 379; are decisions of this Court which are supposed to maintain this principle. It is unnecessary here to decide how far those cases

may be held to go beyond the application of the law there laid down to the facts in each case. In each of those cases the party invoking the aid of the Court relied upon an instrument valid under our laws, and it was held, in each instance, that the *lex fori* would be presumed to apply until it was shown that the foreign law was different. The presumption was one of a kind often made *ut res magis valeat quam pereat*. Here, there was evidence that the law of New Jersey was in a statutory form. And, inasmuch as the foreign law is a fact which may be proved by one side or the other, and is a fact material to the issue in determining the legality of the alleged first marriage, the rule comes in and applies, That no presumption can be made against the innocence of the party charged with a crime. It is the duty of the Commonwealth to prove every fact essential to make out the guilt of the accused, and the facts proved must be inconsistent with the theory of his innocence, or with any theory except that of his guilt. To prove the legality of the alleged first marriage, the law of New Jersey must be shown; and the defendant can not be called upon to give any proof on the subject. — 1 *Greenl. Ev.* §§ 34, 35; 3 *Ibid.* § 29; *Rex vs. Twyning*, 2 *B. & Ald.* 386. Cases of prosecution for polygamy are not unfrequent, where the first marriage was charged to have been celebrated abroad, and the Courts have always required proof, not only of marriage in fact, but of a valid marriage according to the foreign law. — 2 *Greenl. Ev.* § 461; *Ros. Cr. Ev.* 310, 320.

The certificate of marriage, even if the law of New Jersey had been proved, was improperly admitted in evidence. Without deciding whether the Act of Congress can be made to apply to such documents at all, we can discover no ground upon which this certificate could be received in a criminal case. By the English law, a register of marriage is not a clergyman's certificate, but is signed by the parties in the presence of witnesses. — 1 *Russ. on Crimes*, 216. Proof of a register there, is proof of the act of the party as much

as proof of his signature to a deed would be. But a cer-tificate[1] merely signed by the minister, while it may per-haps avail in civil proceedings, if properly supported, can not avail in criminal trials, where the defendant is entitled to confront the witnesses. And this certificate is entitled to no credit for other reasons. It bears no date, and does not either declare where the marriage took place, or show where the minister resided. It does not show, therefore, that he acted within his jurisdiction, or that the marriage took place as charged in the indictment, in New Jersey. And it does not appear to have been made at or near the time of the marriage. On the contrary, its record being made after the arrest of the prisoner, there is room for presumption the other way. Such an instrument is not entitled to the slightest con-sideration, and is inadmissible for any purpose. — 1 *Greenl, Ev.* § 485; *Mundy vs. Munroe,* 1 *Mich.* 68.

The only other question of importance in this case is, Whether a prisoner may be convicted of polygamy upon his own confession, merely, of the first marriage.

It is declared by Russell and Roscoe to be a matter of doubt. — 1 *Russ. on Crimes,* 217, 218; *Roscoe Cr. Ev.* 312. *Truman's Case,* there referred to, was not a case of mere con-fession, but there was also documentary evidence. In *Regina vs. Simmonsto,* 1 *C. & K.* 164, where the admission was of a marriage very much like the first marriage here alleged, that is, of a marriage in New York by a Presbyterian minis-ter, it was doubted whether the admission was enough to prove the marriage to have been a valid one under the laws of New York. The judge allowed the case to go to the jury, advising them that the law of New York was material; and a verdict was found of not guilty. The subsequent cases decided, in effect, that a foreign law could not be proved by any such testimony. And in *Regina vs. Flaherty,* 2 *C. & K.* 781, it was held expressly that there must be evidence of the first marriage beyond the mere admission of the prisoner. The English law must, we think, be considered as against allowing

a conviction for this offense on mere admissions. There is a consideration hinted at in some of the cases which has much force. An admission of a valid marriage, is an admission of law as well as of fact, and such admissions are never regarded as of much weight; and certainly never ought to satisfy a Court of what the law is, where that becomes material.— 1 *Greenl. Ev.* § 96. Mr. Greenleaf expresses the opinion that the *corpus delicti* should be proved by other evidence before a conviction should be permitted. It was so held in a case of bigamy by the Supreme Court of New York, in *People vs. Humphrey*, 7 *Johns*. 314. And this law has since been recognized in several cases in that State.—See *Gahagan vs. The People*, 1 *Park. Cr. R.* 378. There are undoubtedly some authorities to the contrary; but the weight of reason is, we think, in favor of requiring further evidence.

Some confusion has been created by not distinguishing between the various kinds of confessions. A deliberate confession in open court is treated as sufficient evidence, always, as far as it goes, if made on the trial of the cause, and perhaps even on the preliminary hearing, provided it is made freely. It is regarded as proof on the same principle with a plea of guilty, because the accused can not be supposed to act without consideration. But confessions made extra-judicially are often misunderstood, and easily perverted. It will be found that very few, if any, convictions have been allowed without some cumulative evidence.— See *People vs. Hennessy*, 15 *Wend*. 147, for some remarks on this subject.

There would be a peculiar difficulty in resting upon confessions and cohabitation alone, arising from the act that persons forming illicit connections are very rarely bold enough to live openly in the community in such a relation, and avow its existence. To confess it, would expel them from all decent society; and very few are so infatuated as to forego the advantages of social intercourse and respectability, if they can obtain them by the assumption of virtue. For civil rights, the law holds them to their professions, but in criminal cases the offense must actually exist.

THE PEOPLE *vs.* LAMBERT.

No doubt in these, as in all other criminal prosecutions, circumstantial evidence of a conclusive nature may often avail, where direct testimony is inaccessible. But it must be testimony not reasonably capable of any other interpretation. It must be testimony from which nothing but guilt can, in the natural order of things, be deduced.—*Commonwealth vs. Webster*, 5 *Cush.* 295. The case of *Rex vs. Inhabitants of Brampton*, 10 *East*, 282, is an instance where the evidence would be generally considered satisfactory. There it was proved that the parties, with the expressed desire of marriage, went to a chapel in the island of St. Domingo, where a service, purporting to be a marriage service, was publicly performed, by a person in the dress of a priest, and that they subsequently lived together, until the death of one of them. The publicity of the matter, the place of celebration, the previous intent and subsequent acts of the parties, were allowed, and properly held to be proof of a valid marriage, according to the law of St. Domingo, without further evidence of that law. The various opinions in the case all concurred in sustaining the marriage, and contain much good sense. Other cases may be supposed, where the testimony might vary from these circumstances and be equally conclusive, although falling short in various particulars. Circumstantial evidence assumes many forms, and can not always be limited or defined in advance. We do not mean to decide whether or not evidence by an eye-witness, of an actual marriage, may not, in some cases, be dispensed with, where there is other circumstantial evidence going to establish it conclusively. But it would be very unsafe to permit a conviction upon any proof which is susceptible of two interpretations, and upon which any theory can be reasonably based of innocence of the offense charged.

We think the first marriage and its legality must be affirmatively proved by evidence beyond the mere confessions and conduct of the prisoner, as shown in the bill of exceptions.

The other points in the case are substantially covered by the remarks already made. For the reasons mentioned, we think the defendant was improperly convicted.

Let it be certified to the Circuit Court for the county of Wayne, as the opinion of this Court, that the verdict in this cause should be set aside, and a new trial granted.

The other Justices concurred.

*Certified accordingly.*