[No. 1672.]

Hugh Patterson v. The State.

1. Evidence — Certified Copies of State Laws.— The Act of Congress (Pasc. Dig., arts. 3709, 3710) provides for the exemplification and authentication of State laws. The statute of this State (Rev. Stats., art. 2250) provides that "the printed statute books of this State, of the United States, of the District of Columbia, or of any State or Territory of the United States, or of any foreign government, purporting to have been published under authority thereof, shall be received as evidence of the acts and resolutions therein contained." It is further provided by statute (Rev. Stats., art. 2251), that "a certified copy under the hand and seal of the Secretary of State, of any act or resolution contained in any of such printed statute books deposited in his office, or of any law or bill, public or private, deposited in his office in accordance with law, shall be received as evidence thereof."

2. Same — Bigamy — Proof of Foreign Laws.— A general rule upon the question of proving foreign laws has been correctly stated as follows: "Laws of a State under these provisions, when offered as evidence, are not subservient to or within the purview of the rules which apply to proofs of private documents. They are exceptional, and, if parol evidence with regard to them is admissible at all, it must be on some ground peculiar to the subject of foreign laws." The written law of another State cannot be proved by parol in Texas. Under the rules stated, certain written instruments, certified under seal by the Secretary of State of Texas to be true copies of certain statutes of the State of M. deposited in his office, were properly admitted on behalf of the State, in a prosecution for bigamy, for the purpose of proving the first marriage of the defendant.

3. Same.— It was objected to the certificate of the Secretary of State that it "only purported to contain a portion of the laws of Michigan regulating marriage in that State, and that the said purported copy shows on its face that thirteen different sections of said law are omitted." Held, that the omissions do not invalidate the certificate as to the sections given therein, and, in the absence of proof to the contrary, this court is authorized to hold that the sections copied into the certificate are all the sections relating to the rites of marriage and its solemnization in Michigan.

4. Statutes Construed — Case Stated.— Sections 7 and 18 of Chapter CLXIX, Title XXVIII, of the Laws of the State of Michigan carry their own interpretation on their face. Section 7 authorizes justices of the peace to solemnize marriages in their respective counties, and to make certificate of the fact. By section 18 it is provided that "the original certificates and records of marriage made by the minister or justice, as prescribed in this chapter, and the record thereof made by the county clerk, or a copy of such record duly certified by such clerk, shall be received in all courts and places as presumptive evidence of the fact of such marriage." Having proved the law, the prosecution offered in evidence a copy of the certificate of one P., a justice of the peace, to the effect that, on October 27, 1866, in the township of M. in the State of Michigan, he united the defendant in marriage to one Ann M. C. To this copy of the marriage certificate was attached the official certificate of B., county clerk of said M. county, Michigan, certifying to the correctness of the copy upon comparison with the original on record in his office. Two other certificates — those of the Secretary of State of Mich-

igan — certifying the official characters of the justice and the county clerk, were also attached. The defendant objected to the admission in evidence of the justice's certificate, 1, because it was not competent evidence of a marriage in a foreign State. 2. Because on its face it shows that it is not the original, but a copy of the certificate of the justice. 3. Because no loss or absence of the original has been shown or accounted for. 4. Because it was not filed in the case until after commencement of the trial; nor had any previous notice of filing been given defendant or his counsel. 5. Because, even if it were the original certificate of marriage in another State, it could not be used in evidence in a criminal trial in this State until the laws of such other State are proved and shown to 'confer such authority upon a justice of the peace. Reversing their order in considering these objections, it is *held:*

*First.* The laws of Michigan expressly conferred upon a justice of the peace authority to solemnize marriage in that State, and those laws having been properly proved by the certificate of the Secretary of State of this State, the fifth ground of objection is not well taken.

*Second.* Official certificates of records of another State, when properly authenticated under the acts of Congress, are, by the terms of the law, declared entitled to such faith and credit throughout the United States as they have by law or usage in the courts of the State from whence the said records are and have been taken. Such certificates imply verity and are not required to be proven up. Hence it was not necessary that they should have been filed three days before trial, with notice, in order to be admissible; and therefore the fourth objection is not well taken.

*Third.* The weight of authority has established the rule that "a copy given by a public officer, whose duty it is to keep the original, ought to be received in evidence." Under the law of Michigan, the county clerk was the proper custodian of the original marriage certificate; and therefore the second and third objections are not well taken.

*Fourth.* Where a certificate of marriage is required to be registered, and is properly registered in the county under the State law, it can be authenticated as an exemplification of a record to another State under the act of Congress, and, being a record which can properly be so exemplified when thus authenticated, it is admissible as other documentary evidence would be. By the law of Michigan, as it was proved on this trial, it was required that marriage certificates should be recorded by the county clerk, and that his certified copy of such record "shall be received in all courts and places as presumptive evidence of the fact of such marriage." Under this rule, the copy certified according to law was not only admissible in evidence, but was sufficient to prove the marriage and the time of its celebration, if the parties be identified as the parties named in the certificate. It was, under the facts of this case, at least confirmatory of reputation and cohabitation, and therefore the first objection is not well taken. See the opinion *in extenso* for an elaboration of the question.

APPEAL from the District Court of Jefferson. Tried below before the Hon. W. H. Ford.

The conviction in this case was for bigamy. The penalty assessed against the appellant was a term of two years in the penitentiary. The State first introduced in evidence a certified copy of certain

laws of the State of Michigan relating to the rite of marriage and its solemnization in that State, to which was appended the certificate of the Secretary of State of the State of Texas, as it is set out in the opinion. Objection to this evidence being overruled, the copy was read in evidence, as follows:

### " Title XXVIII.

#### " chapter clxix.

#### " *Marriage and the solemnization thereof.*

" (4719) Section 1. Every male who shall have attained the full age of eighteen years, and every female who shall have attained the full age of sixteen years, shall be capable in law of contracting marriage, if otherwise competent.

.    .    .    .    .    .    .    .    .    .    .    .

" (4725) Section 7. Marriages may be solemnized by any justice of the peace in the county in which he is chosen; and they may be solemnized throughout the State by any minister of the gospel who has been ordained according to the usages of his denomination, and who resides in this State, and continues to be a preacher of the gospel.

" (4726) Section 8. All justices of the peace and ministers of the gospel are hereby authorized and required, before solemnizing any marriage, to examine at least one of the parties on oath, which oath they are hereby authorized to administer, as to the legality of such intended marriage.

" (4727) Section 9. On the solemnization of marriage no particular form shall be required, except that parties shall solemnly declare, in the presence of the magistrate or minister, and the attending witnesses, that they take each other as husband and wife; and in every case, there shall be at least two witnesses, besides the minister or magistrate, present at the ceremony.

.    .    .    .    .    .    .    .    .    .    .    .

(4730) Section 16. No marriage solemnized before any person professing to be a justice of the peace or a minister of the gospel, shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected, on account of any want of jurisdiction or authority in such supposed justice or minister. *Provided*, the marriage be consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage.

.    .    .    .    .    .    .    .    .    .    .    .

"(4732) Section 18. The original certificates and records of marriage made by the minister or justice, as prescribed in this chapter, and the record thereof made by the county clerk, or a copy of such record duly certified by such clerk, shall be received in all courts and places as presumptive evidence of the fact of such marriage."

The State next introduced in evidence, over the objection of the defendant, a certified copy of a marriage certificate, taken from the records of Manistee county, Michigan. It reads as follows:

" STATE OF MICHIGAN, } ss.
    *County of Manistee.* }

" This is to certify that Hugh Patterson, aged twenty-two years, and Mrs. Ann Maria Cowen, aged twenty-one years, both of the township of Manistee, were by me married on the evening of the 27th of October, A. D. 1866, in presence of the following persons as qualified witnesses of the fact.

" THOS. A. PAINE,<br>"Justice of the Peace."

"ALEXANDER PERRY, } Witnesses."     (U. S. Stamp.)
" DELIA COLLINS, }

To this document were attached the following certificates:

" STATE OF MICHIGAN, } ss.
    *County of Manistee.* }

" I, J. P. Baxter, clerk of the county of Manistee and the courts thereof, do hereby certify that I have compared the foregoing copy of marriage certificate, Hugh Patterson to Mrs. Ann Maria Cowen, with the original record in my office, and that the same is a correct transcript therefrom, and the whole of such original.

" Witness my hand and the seal of the circuit court for the county of Manistee, at the city of Manistee, this 26th day of March, A. D. 1884.

[SEAL]                              " J. P. BAXTER, Clerk."

The other two certificates were those of the Secretary of State of the State of Michigan, verifying the official characters of Thos. A. Paine, justice of the peace in and for Manistee county, Michigan, and J. P. Baxter, as county clerk of the said Manistee county. Both of these certificates were under the great seal of State.

The State next introduced Mrs. Adams, who identified the defendant as Hugh Patterson. She was well acquainted with both the defendant and the widow Ann Maria Cowen in Manistee, Michigan. She knew Ann Maria Cowen before her reputed marriage to the defendant in 1866. She afterwards knew her as Ann Maria

Patterson, in Manistee, Michigan. She was not present at their marriage, and had no personal knowledge of their marriage. Defendant and Ann Maria Cowen were reputed to be man and wife in Manistee, and were so received and considered in that community. Ann Maria and her sister both introduced the defendant to the witness as the husband of Ann Maria. The witness had seen Ann Maria since she, witness, left Manistee. Ann Maria came to Beaumont during the year 1884, in search of her husband, the defendant. She stopped at the Crosby House, whether as a guest or otherwise the witness did not know. The defendant came to Beaumont about two years prior to this trial. The witness, who had preceded him about a year, asked after his wife, the said Ann Maria. He told the witness that he left her in Michigan, and that he was going back to her. When Ann Maria left Beaumont she said she was going back to Michigan. Witness knew nothing more bearing upon the case, and was sorry she knew anything.

The State next read in evidence the following marriage license:

" State of Texas, }
    Jefferson County. }

" To any Judge of the County or District Court, regularly licensed or ordained minister of the gospel, or justice of the peace, in and for said county, Greeting:

" You are hereby authorized to solemnize the rites of matrimony between Mr. W. H. Patterson and Mrs. Bettie Ball, and make due return to the clerk of the county court within sixty days thereafter, certifying your action under this license.

" Witness my official signature and seal of office, at office in Beaumont, this 7th day of December, A. D. 1883.

[SEAL]                                   " L. L. Miller,
                            " Clerk County Court, Jeff. Co."

The said license bore the following indorsement:

" I, W. D. Ivey, hereby certify that on the 7th day of December, A. D. 1883, I united in marriage W. H. Patterson and Mrs. Bettie Ball, the parties above named.

" Witness my hand, this the 8th day of December, A. D. 1883.
                            " W. D. Ivey, Co. Judge J. C."

" Filed for record and recorded, December 10, 1883.
                            " L. L. Miller, Clerk."

W. D. Ivey was next introduced by the State. He testified that he was county judge of Jefferson county on the 7th day of December, 1883, and as such officer solemnized the marriage of the defendant and Mrs. Bettie Ball.

---

---

The questions discussed in the opinion were presented in the motion for new trial.

*H. W. Greer*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. This is an appeal from a judgment of conviction for bigamy. On the trial the State was permitted, over objections of defendant, to read a certified copy of sections 1, 7, 8, 9, 16 and 18 of Title XXVIII, Chapter CLXIX, of the laws of the State of Michigan, relating to marriage and the solemnization thereof. Attached to this copy was the following certificate, viz.:

"THE STATE OF TEXAS,

"*Department of State.*

"I, J. W. Baines, Secretary of State of the State of Texas, do certify that the foregoing are true copies of sections 1, 7, 8, 9, 16 and 18 of Chapter CLXIX, Title XXVIII, concerning marriage and the solemnization thereof, as contained in the compiled laws of the State of Michigan, purporting to have been compiled by State authority in the year A. D. 1872; said volume being now on deposit in this department, and received by due course of exchange. Witness my official signature and seal," etc. Signed, J. W. Baines, Secretary of State, with seal attached.

Two objections were urged to the introduction of this certificate as evidence. 1. Because, under the Constitution of the United States and of this State, providing that an accused must be confronted with the witnesses against him, such evidence was inadmissible against him. 2. Because said certificate only purported to contain a portion of the laws of Michigan regulating marriage in that State, and that said purported copy shows on its face that sections 2, 3, 4, 5, 6, 10, 11, 12, 13, 14, 15, 16 and 17 of said law are omitted.

As to the first objection, the act of Congress provides for the exemplification and authentication of State laws. (1 U. S. Stats. at Large, p. 122; Brightley's Dig. of Laws of U. S., p. 265; Pasc. Dig., arts. 3709, 3710.)

Our statutes provide that "the printed statute books of this State, of the United States, of the District of Columbia, or of any State or Territory of the United States, or of any foreign government, purporting to have been printed under the authority thereof, shall be received as evidence of the acts and resolutions therein contained." (Rev. Stats., art. 2250.)

" A certified copy, under the hand and seal of the Secretary of State, of any act or resolution contained in any of such printed statute books deposited in his office, or of any law or bill, public or private, deposited in his office in accordance with law, shall be received as evidence thereof." (Rev. Stats., art. 2251.) Laws of a State, under these provisions, when offered as evidence, are not subservient to, or within the purview of, the rules which apply to proofs of private documents. They are exceptional, and, if parol evidence with regard to them is admissible at all, it must be on some ground peculiar to the subject of foreign laws. (1 Greenl. Evid., §§ 488, 489.) The written law of another State cannot be proved by parol in Texas. (*Martin* v. *Payne*, 11 Texas, 294.) The identical question before us was made in *The People* v. *Jones*, and the supreme court of Michigan said: " We do not think the provision of the Constitution securing to the defendant in a criminal prosecution the right 'to be confronted with the witnesses against him' can apply to the proof of facts in their nature essentially and purely documentary, and which can only be proved by the original, or by a copy officially authenticated in some way, especially when the fact to be proved comes up collaterally, as in the present case. In such a case it would in fact be impossible to apply it, except by requiring the attendance and testimony of the Secretary of State to the fact of the filing of the papers, etc. (statute laws), to which he has certified. We have been cited to no case, and are not aware of any, which would authorize us to reject the certificates on this ground." (24 Mich., 215.) This court has enunciated the same doctrine, with regard to documentary proof, in *Rogers* v. *The State*, 11 Texas Ct. App., 608, and *May* v. *The State*, 15 Texas Ct. App., 430.

As to the omission of certain sections of the Michigan law in the certificate of the Secretary of State, such omission will not invalidate the certificate as to the sections given therein, and, in the absence of proof to the contrary, we are warranted in holding that the sections copied into the certificate are all the sections relating to the rites of marriage and its solemnization in Michigan. Those copied into and embraced within the certificate appear to us amply sufficient for an understanding of the Michigan law, so far as necessary to be understood and applied to the questions raised by the facts in this case. From the sections of that law, as copied, we find that section 7 authorizes justices to solemnize marriages in their respective counties, and to make certificate of the fact. By section 18 it is provided that " the original certificates and records of mar-

riage made by the minister or justice, as prescribed in this chapter, and the record thereof made by the county clerk, or a copy of such record duly certified by such clerk, shall be received in all courts and places as presumptive evidence of the fact of such marriage."

Having proved the law, the prosecution then offered in evidence a copy of the certificate of Thos. A. Paine, justice of the peace, to the effect that he had, on the evening of the 27th of October, 1866, in the township of Manistee, State of Michigan, united in marriage Hugh Patterson and Mrs. Ann Maria Cowen. To this copy of the marriage certificate was attached the official certificate of Baxter, the county clerk of Manistee county, certifying that the copy of the marriage certificate had been compared by him with the original record in his office, and that the same was a correct transcript therefrom, and the whole of such original. Two other attached certificates were those of the Secretary of State of Michigan,— one certifying to the official character of Paine as justice at the date of said marriage,— the other being a similar certificate as to the election and qualification of Baxter as county clerk of Manistee county.

Defendant's objections to the justice's certificate were: "1. Because said certificate is not competent evidence of the marriage of defendant and Ann Maria Cowen in a foreign State. 2. Because said certificate, with its accompanying certificate of Baxter, county clerk, shows on its face that it is a copy and not the original certificate of the justice. 3. Because no loss or absence of the original had been shown or accounted for. 4. Because the said certificate was not filed in the case until after commencement of the trial; nor had any previous notice of filing the same been given defendant or his counsel. 5. Because said justice's certificate, though it had been the original certificate of marriage in another State, could not be used in evidence in a criminal trial in this State until the laws of such other State are proven and shown to confer such authority upon a justice of the peace."

As to the last two objections, which will first be noticed, we have already seen that the laws of Michigan were proven up by the certificate of the Secretary of State of Texas, and that those laws expressly conferred upon a justice of the peace authority to solemnize the rites of matrimony in that State.

Should the certificate have been filed three days before trial and notice of such filing been given, in order to make it admissible as evidence in the case? Such is unquestionably the rule with regard to deeds and instruments of like nature, both in civil and criminal cases; the filing and previous notice being designed to obviate the

necessity for proof of the execution of the instrument, and the statute further contemplates that such instruments, filed with notice, when offered in evidence shall be free from the taint of forgery. (*Johnson* v. *The State*, 9 Texas Ct. App., 249.)

But this rule of practice does not apply to official certificates of records of another State. These, when they have been properly authenticated under the acts of Congress, are by the terms of the law declared entitled to such faith and credit throughout the United States as they have by law or usage in the courts of the State from whence the said records are and have been taken. (Pasc. Dig., arts. 3709 and 3710.) Such certificates import verity and are not required to be proven up. (1 Greenl. Evid., §§ 488, 489.) We have already seen by the eighteenth section of the Michigan law, as quoted above, that a copy of a marriage certificate, "or the record of the same duly certified by the county clerk," it is declared, "shall be received in all courts and places as presumptive evidence of the fact of such marriage."

The second and third objections are that the justice's certificate, as offered, was a copy of an original, which original not having been shown to be lost, a copy could not be used. Mr. Greenleaf says, "the weight of authority seems to have established the rule that a copy given by a public officer whose duty it is to keep the original ought to be received in evidence." (1 Greenl. Evid., § 485.) Under the Michigan law, the county clerk was the proper custodian of the original marriage certificate.

We have reserved for the last to be considered defendant's first ground of objection to the certificate, because the most serious and important. The question it presents is whether or not such a certificate of a marriage solemnized in another State is admissible as evidence, and competent to prove the fact of such marriage on a trial for bigamy in this State?

First, was it admissible as evidence? This precise point came up in *The People* v. *Lambert*, 5 Mich., 349, which was a trial on a charge of bigamy,— the lower court having admitted as evidence a certificate from New Jersey of the first marriage. The court say: "The certificate of marriage, even if the law of New Jersey had been proved, was improperly admitted in evidence. Without deciding whether the act of Congress can be made to apply to such documents at all, we can discover no ground upon which this certificate could be received in a criminal case. By the English law a register of marriage is not a clergyman's certificate, but is signed by the parties in the presence of witnesses. (1 Russ. on Crimes, 216.) Proof of a

register there is proof of the act of the party as much as proof of his signature to a deed would be. But a certificate merely signed by the minister (which was the case with the certificate they were considering), while it may perhaps avail in civil proceedings, if properly supported, cannot avail in criminal trials where the defendant is entitled to confront the witnesses." No authority is cited by the court in support of this doctrine, nor have we found the doctrine approved in any subsequent decision.

In *Smith* v. *Smith*, which was an action for divorce, an attempt was made to establish the former marriage by proof of the cohabitation of the parties, and also by evidence of its solemnization by a justice of the peace, an officer duly authorized, as it was contended, by the laws of the State of Missouri, to celebrate the rites of matrimony. Our supreme court say: "Nor are we of opinion that the foreign marriage was sufficiently established by the evidence adduced of its actual solemnization. This consisted in a certified copy from the office of the recorder of Ralls county, State of Missouri, of a certificate under the sign manual of a justice of the peace, that he had on a certain day in 1822 solemnized according to law the marriage between the deceased and one Harriet Stone. Admitting that this record is authenticated according to the act of Congress of 1834, and that it should have therefore such faith and credit accorded to it in our courts as by laws and usages of the State of Missouri it has in the courts of that State; yet, having no knowledge of the laws and usages of that State relative to the subject-matter, we cannot determine the faith and credit to which this office copy of the record may be entitled. The form, validity and effect of the record, and of the probate if any be required, must depend on the provisions of some local statute, and this should have been proved before the competency or force of the evidence could be determined. We cannot know, without proof of the law, whether such an instrument is authorized to be recorded, nor the legal effects of the production of a copy of such a record in a court of justice." (1 Texas, 621.)

In the case we are considering the law of Michigan was proven. By that law it was required that marriage certificates should be recorded by the county clerk, and that his certified copy of such record "shall be received in all courts and places as presumptive evidence of the fact of such marriage."

Was this record such an one as could be exemplified and authenticated under the act of Congress to another State? If a record, we see no reason why not. The statute of the United States reads: "That

from and after the passage of this act, all records and exemplifications of office books which are or may be kept in any public office of any State, not appertaining to a court, shall be proved or admitted in any other court or office in any other State, by the attestation of the keeper of the said records or book, and the seal of his office thereto annexed, if there be a seal, together with a certificate of the presiding justice of the court of the county or district, as the case may be, in which said office is or may be kept; or of the Governor, the Secretary of State, etc., . . that said attestation is in due form and by the proper officer, . . . and if said certificate be given by the Governor, the Secretary of State, etc., it shall be under the great seal of the State in which the said certificate is made. And the said records and exemplifications, authenticated as aforesaid, shall have such faith and credit given to them in every court and office in the United States as they have in the court or offices of the State from whence the same are or shall be taken." (2 U. S. Stats. at Large, 298; Brightley's Digest of Laws of U. S., p. 266; Pasc. Dig., art. 3710; Whart. Crim. Evid., §§ 179, 180.)

"Exemplifications of registries of other States must be authenticated (unless there be local legislation or adjudications prescribing less stringent tests) according to the act of Congress. When the act of Congress is substantially complied with they may be received." (Whart. Crim. Evid. (8th ed.), § 194.) " An official registry . . . is admissible when kept in conformity with law, and when duly authenticated, to prove such facts as the law requires to be registered. It follows that whenever a baptismal, marriage or burial registry is kept in accordance with statute, such registry being duly authenticated is admissible to prove the facts which are within the statutory authority." (Whart. Crim. Evid., § 530; 1 Whart. Evid., 2d ed., § 653.)

" Where a statute, as is the case in several States, requires the return of a certificate of marriage to be made by the officiating minister to the county clerk, for record, the proper mode of proving such fact is by an exemplification of the certificate. But an exemplification of a foreign certificate of marriage will not be received unless it be proved that the record was kept in conformity with law, and that the person officiating was authorized to officiate." (Whart. Crim. Evid., 2d ed., § 535; 1 Whart. Evid., § 653.)

From these authorities we conclude, when a certificate of marriage is required to be registered, and is properly registered in the county, under the State law, it can be authenticated as an exemplification of a record to another State under the acts of Congress;

and that, being a record which can properly be so exemplified, when thus authenticated it is admissible as other documentary evidence would be. "Documents of a public nature and of public authority are generally admissible in evidence, although their authenticity be not confirmed by the usual and ordinary tests of truth, the obligation of an oath and the power of cross-examining the parties on whose authority the truth of the document depends." (1 Whart. Evid., § 614, and note.)

Mr. Bishop says: "Documentary evidence is receivable, and in proper cases is required, the same in criminal causes as in civil. It is governed by the same rules. For example: A record may be proved by a certified copy. And the constitutional provision securing to indicted persons the right to be confronted with the witnesses against them does not abrogate this method of proving facts in their nature documentary." (1 Bish. Crim. Proc., 3d ed., §§ 1132, 1133, 1134.)

A certificate of marriage in another State being admissible evidence, the next question is how far is it competent to prove a marriage in fact? Mr. Wharton says, "the marriage registry proves not only the fact of marriage, but the time of celebration." (Whart. Crim. Evid., 8th ed., § 532.) Mr. Greenleaf says: "A certificate of marriage, also, by the officiating clergyman or magistrate, though ordinarily not in itself evidence of the fact it recites, yet, if proved to have been carefully kept in the custody of the party whom it affects, and produced from the proper custody, may be read as collateral proof in the nature of a declaration and assertion by the party of the facts stated in the paper. Such certificate also, or a copy of the parish register or other document of the like character, may be read as evidence confirmatory of the proof by reputation and cohabitation." (1 Greenl. Evid., § 463.)

We can see no good reason why, if admissible — and there is no doubt but that it is — it should not, as stated by Mr. Wharton, prove not only the marriage, but the time of celebration, if the parties be identified as the parties named in the certificate. But, let us take Mr. Greenleaf's rule and apply it to the facts of this case. Under his rule it is confirmatory of reputation and cohabitation. In this case a witness testified on the trial that she had lived in Manistee, Michigan; knew defendant and his first wife, *nee* Ann Maria Cowen — was not present at their marriage, but after the marriage was introduced by Ann Maria Cowen that was, to defendant as her husband. That, according to general reputation in Manistee, Michigan, defendant and Ann Maria Cowen were man and wife lawfully married.

That, when she first saw defendant at Beaumont, she asked about his wife Ann Maria, and he said she was still in Michigan, and he intended returning to her. If these facts needed confirmation of the fact of the Michigan marriage, then Mr. Greenleaf says a certificate of that marriage was admissible as confirmatory evidence.

But it is said that reputation of the fact of the first marriage was inadmissible under our statute, which says that " proof of marriage by mere reputation shall not be sufficient." (Penal Code, art. 328.) The statute does not say that reputation is not admissible as evidence, to be taken in connection with other proofs, to establish the fact, but that in and of itself alone, and without other evidence, it is insufficient to establish the fact. Reputation is proof in connection with other facts. (*Dumas* v. *The State*, 14 Texas Ct. App., 464.)

Other errors are assigned and ably discussed in the brief of counsel for appellant, but all those of a material character have been necessarily though incidentally passed upon in the discussion of the questions we have decided in the foregoing pages of this opinion. We believe appellant has been convicted upon competent and legal evidence, and that the evidence is sufficient. We have found no error in the record for which the judgment should be reversed, and it is therefore in all things affirmed.

*Affirmed.*

[Opinion delivered November 5, 1884.]