Thompson, Appellant, vs. Nims, Executor, Respondent.

*September 29 — October 25, 1892.*

*Marriage: Evidence.*

<div style="float:right">83     261<br>17 LRA 847<br>57 LRA 917n</div>

1. The question being whether T., an intestate, and one claiming to be his widow had been married, evidence of statements alleged to have been made by T. and by his relatives, not in the presence of the claimant, to the effect that there had been no marriage, was not admissible.

2. The evidence in this case,— showing, among other things, that many years before the death of T. he and the claimant left the house of her parents, with their full consent, and with trunks and bedding, he declaring that they were to be married; that on the same day they stopped at an hotel, where a person was brought in whom she supposed to be a minister and who stayed about half an hour (the claimant not being allowed to testify as to what took place); that from that time they lived and cohabited together as

man and wife for several years, and as such visited relatives of each; that afterwards they separated, but he occasionally visited her and was always introduced as her husband; that from the time when they stopped at the hotel as aforesaid she always bore the name of Mrs. T. until, twenty years later, having heard and believing that T. was dead, she married one N.; and that she had always borne an untarnished reputation,— is *held* sufficient to show that there had been a marriage at the hotel between T. and the claimant, although there was no record of any license having been issued, and no certificate of the marriage on file.

APPEAL from the Circuit Court for *Rock* County.

This is an appeal from a judgment of the circuit court of Rock county, adjudging Julia L. Nims, since deceased, to be the widow and only heir at law of C. C. Thompson, deceased, intestate, and assigning the residue of his estate to her as such widow. C. C. Thompson died a resident of Rock county in July, 1887, leaving no issue. He left brothers and sisters, among them the appellant. His estate was administered in the county court of Rock county, and after the administrator had filed his final account Julia L. Nims filed in said court a petition, claiming to be the widow of the deceased, and that she was married to him in June, 1858. Upon the trial of this issue in the county court it was adjudged that she was such widow, and upon appeal and trial of the question in the circuit court the same conclusion was reached. After judgment in the circuit court Julia Nims died, and *Frank H. Nims* was duly appointed executor of her last will, and the action has been revived in his name as executor.

It appears that the claimant, Julia Nims, was the daughter of one Spoor, a farmer residing in Lyons, Walworth county, Wisconsin, and was one of a large family of children. In the winter of 1857 and 1858 the deceased boarded at Spoor's house, and he became acquainted with the claimant, who was then twenty-three years of age. Thompson was then engaged in some capacity in the construction of

the Racine & Mississippi Railroad. In March, 1858, he went further west, and seems to have stopped in the vicinity of Freeport. In the latter part of June, 1858, he returned to Spoor's house, and on the morning of the 28th of that month he and Julia left Spoor's house together, he stating they were going to be married. She took some bedding, clothing, and trunks with her, and seems to have been taken to the railroad station in a wagon by some member of the Spoor family. They took the train, and stopped at Davis, Ill., that night, and went to an hotel. The claimant testified that after ariving at the hotel Thompson went out, and presently returned with a person whom she believed was a minister. The court ruled out any testimony by claimant as to what took place after this person entered the room, and no other witness was produced. The claimant further testified that this person staid in the room about half an hour; that after that time she had always borne the name of Mrs. Thompson; that they staid at the hotel that night, and went to Freeport on the next day. It appeared by competent testimony that the couple boarded near Freeport during the summer, living apparently as man and wife, and being so considered; that they visited together at Spoor's house and at the house of Samuel Thompson, a brother of appellant, apparently living and being known as husband and wife; that thereafter they boarded with one Young at Freeport for more than a year, being known as husband and wife, and apparently living as such; that some time in 1860 the claimant went home to her father's house, and staid about two years, and from there went to Racine, where she supported herself for years by clerking in a store.

It also appeared that for several years after she went to Racine Thompson visited her at intervals, sometimes stopping several days, on which occasions she introduced him as her husband, and it appears that they had some corre-

spondence as late as the year 1868. Claimant was always known as Mrs. Thompson at Racine, and according to the testimony led an exemplary life. She testifies that several years before marrying *Mr. Nims* (which it appears was in 1878) she heard that Thompson was dead, and, believing that such was the fact, she married *Nims*.

Thompson appears to have lived at or in the vicinity of Beloit since about 1863 up to the time of his death, being there generally regarded as an unmarried man. The general repute at and near Lyons was that they were married, though there were some who questioned it. It appeared by a certificate of the clerk of the county court of Stephenson county, Illinois (the county in which Davis is situated), that there was no record of any license being issued for the marriage of Thompson and the claimant, and that no certificate thereof was on file.

For the appellant there was a brief by *Dunwiddie & Goldin*, attorneys, and *John Winans*, of counsel, and oral argument by *B. F. Dunwiddie* and *Mr. Winans*. They contended, *inter alia*, that where one of the parties, after cohabitation with the other for a length of time, marries a third person, the presumption arising from such cohabitation is thereby destroyed and an actual marriage must be proved. *Doe ex dem. Breakey v. Breakey*, 2 U. C. Q. B. 349, 358; *Taylor v. Taylor*, 1 Lee, 571, 5 Eng. Ec. R. 454; *Jones v. Jones*, 45 Md. 144; Bishop, Mar. & Div. sec. 506; *Lapsley v. Grierson*, 1 H. L. Cas. 498, 509.

For the respondent there was a brief by *E. Merton*, attorney, and oral argument by *Mr. Merton* and *Mr. William Smith*. They argued, among other things, that where two persons are living together as husband and wife the law presumes a valid marriage contract between them, and evidence to repel this presumption must be strong, distinct, satisfactory and conclusive. *Hynes v. McDermott*, 91 N. Y. 451, 43 Am. Rep. 677; *Teter v. Teter*, 101 Ind. 129, 51 Am.

Rep. 742; *Gall v. Gall*, 114 N. Y. 109; 1 Bishop, Mar. & Div. sec. 457. Claimant should have been permitted to testify as to her marriage. *Gibson v. Gibson*, 24 Neb. 394; *Appeal of Reading F. Ins. & T. Co.* 113 Pa. St. 204; Cowp. 593; Hubb. Ev. Succ. 241; *Young v. Foster*, 14 N. H. 114.

WINSLOW, J.   A question is raised as to the exclusion of certain testimony. Appellant offered to prove that in 1867 Thompson stated that he had never married claimant; also, that Samuel Thompson, brother of the deceased, at one time stated that he did not believe they were married. This testimony was ruled out. It was not alleged that either statement was made in presence of the claimant. The rulings were unquestionably right, upon very familiar principles. Of this same nature, also, was the statement of Mrs. Samuel Thompson that she came to the conclusion they were not married, which the court struck out.

Appellant's main contention is that the evidence is insufficient to prove a marriage between Thompson and the claimant. Marriage, under our statute, is a civil contract. To constitute marriage there must be an agreement between the parties that they will hold towards each other the relation of husband and wife, with the responsibilities and duties which attach to that relation. *Williams v. Williams*, 46 Wis. 464. This agreement is a fact to be proven. It may be proven by circumstantial evidence, as many other facts are proven. In this case there is no direct evidence that these parties promised to assume the relations of husband and wife, but the circumstances proven seem to us very persuasive, and to justify the finding that there was a marriage in fact. The parties left the house of the claimant's father and mother apparently with their full consent and knowledge, with trunks and bedding, he declaring that they were to be married. They stopped the same day at an hotel. A person whom the claimant

supposed to be a minister appears, something is done, the nature of which the claimant is prevented from disclosing, and from that moment the claimant is known and introduced as Mrs. Thompson. From that time, also, the parties live and cohabit together apparently as husband and wife, visit relatives of both, assuming to bear that relation to each other, and continue those relations for several years. Then follows a separation, the cause of which does not appear, broken, however, by occasional visits, at which times the relation is always announced when occasion calls for it. The claimant always goes by the name of Thompson, and always bears an untarnished reputation.

We lay down no general rule as to the amount of proof necessary to establish a marriage in fact, but the circumstances proven here seem sufficiently clear and weighty to prove that a contract of marriage was entered into between the parties at the hotel in Davis, although no witness relates the words used. There was either a marriage contract made there or else this union was illicit in its inception. In view of the abundantly proven good character of the claimant, we refuse to accept the latter horn of the dilemma. There may have been no license obtained, but this was not essential to make the contract binding on the parties.

The marriage to *Nims* in 1878 tends, undoubtedly, to weaken the inference to be drawn from the cohabitation with Thompson, but, under the circumstances here, it appearing that the claimant supposed Thompson to be dead, we regard it as of little weight.

*By the Court.*— Judgment affirmed.

See note to this case in 17 L. R. A. 847.— REP.