PEOPLE *v.* IMES.

1. ADULTERY—FOREIGN MARRIAGE—EVIDENCE.

In a prosecution for adultery, the testimony of the clergy-
man and others who participated in a marriage ceremony in
a foreign country between complainant and respondent,
although insufficient, in the absence of proof as to the laws
of such country, to prove a valid marriage, is admissible to
show that a ceremony was in fact performed, which, if fol-
lowed by cohabitation, would establish the marital relation.

2. SAME—ADMISSIONS—COHABITATION.

Evidence that respondent admitted having cohabited with
the complainant for some time after the ceremony is admis-
sible on such trial.

3 SAME—LETTERS.

Letters written by a respondent charged with adultery to the
complainant, in which she is addressed as his wife, are admis-
sible to prove their marriage.

4. SAME—HUSBAND AND WIFE—COMPETENCY AS WITNESSES.

A wife who is the complainant in the prosecution of her
husband for adultery cannot testify to their marriage and
cohabitation.

5. CRIMINAL LAW—MARRIAGE—EVIDENCE.

A foreign certificate of marriage is inadmissible in a criminal
case.

6. ADULTERY—EVIDENCE—ADMISSIONS OF PARAMOUR.

Evidence that the person with whom respondent is charged
to have committed adultery stated in respondent's absence
that respondent had had sexual intercourse with her is inad-
missible as hearsay.

Error to recorder's court of Detroit; Chambers, J.
Submitted June 19, 1896. Decided July 21, 1896.

George W. Imes was convicted of adultery, and sen-
tenced to imprisonment in the Detroit House of Correc-
tion for one year. Reversed.

*Frank H. Dohany* (*Frank C. Moriarty*, of counsel), for appellant.

*Allan H. Frazer*, Prosecuting Attorney, and *William H. Turner*, Assistant Prosecuting Attorney, for the people.

HOOKER, J.   The defendant was convicted of the offense of adultery with one Edith Doe.   The record contains all of the evidence taken upon the trial, and shows that no testimony was offered in behalf of the defendant.

To prove the marriage of the defendant, the following evidence was introduced:

1. The testimony of the clergyman and others participating in the marriage ceremony in Ontario, who fully identified the parties.

2. Admissions of the defendant that he cohabited for four weeks with his wife, the complainant.

3. His letter to complainant, in which he addressed her as wife.

This testimony was all admissible.   In addition, complainant testified to the marriage and cohabitation, and the marriage certificate was offered in evidence.   The testimony of complainant was inadmissible.   See *People v. Isham*, 109 Mich. 72.   It was not objected to, however, and no error is assigned upon its introduction. The marriage certificate, which was received, was made by the clergyman, who testified to the facts that it stated, viz., that he performed a marriage ceremony between these parties, who were identified.   In the absence of proof of the law of Ontario, this testimony was not sufficient to show a marriage ceremony in accordance with the law of that place, but the testimony of the witnesses was admissible to prove the fact of a marriage ceremony between the parties, which, if followed by cohabitation as husband and wife, would establish that relation.   *People v. McQuaid*, 85 Mich. 127; *Hemmings* v. *Smith*, 4 Doug. 33; *People* v. *Calder*, 30 Mich. 85; *Hutchins* v. *Kimmell*, 31 Mich. 126; 3 Rice, Ev. 800–805; *People* v.

*Lambert,* 5 Mich. 367 (72 Am. Dec. 49). The admission of the foreign certificate of marriage was erroneous, being hearsay. *People* v. *Lambert,* 5 Mich. 364 (72 Am. Dec. 49). 2 How. Stat. § 6222, authorizes the introduction of domestic certificates of marriage, which are held admissible in criminal cases. See *People* v. *Isham, supra.* But foreign certificates stand upon a different footing. They have not the force of a church registry, which is admissible upon questions of legitimacy, date of birth, marriage, etc. See *People* v. *Lambert,* 5 Mich. 364 (72 Am. Dec. 49). There is much conflict of authority upon the subject of proof of marriage in criminal cases. For a general discussion of the subject, see 3 Rice, Ev. pp. 800–811; Bish. Stat. Crimes, § 610; *Taylor* v. *State,* 2 Hawley, Am. Cr. Rep. 17, and note.

To prove the alleged adulterous intercourse, testimony was offered showing the relations between the defendant and Edith Doe; and one Mrs. Garrison was permitted to testify that Edith Doe told her, in the absence of defendant, that they had sexual intercourse. This Mrs. Garrison was a witness called by the prosecution, and this testimony was obtained on her redirect examination. Counsel seek to justify it on the ground that it was a part of a conversation drawn out on cross-examination. On direct, she had testified that she had met them together often at Edith's place and elsewhere. On cross-examination, counsel for the defendant sought to show that Edith claimed to be his wife. She said she had no personal knowledge of their having sexual intercourse. On redirect, the question was asked directly, " Did she say anything about their having had sexual intercourse ? " which question was answered in the affirmative. This question and answer, if admissible at all, was because the statement occurred during a conversation about the provisions for housekeeping, which Edith said she was making in anticipation of defendant's arrival. If it had any natural connection with the subject, and was admissible at all, it was because of the statements of Edith, elicited

on cross-examination of the witness, which, had they been objected to, should have been excluded as hearsay. It was not competent proof of the existence of the marriage relation, and counsel should not have sought to elicit it. We think the statement was one prejudicial to the defendant, and possibly the turning point of the case.

The conviction should be set aside, and a new trial ordered. It is therefore so ordered.

The other Justices concurred.