RUTH L. HEMINWAY and Others v. MAUD MILLER.[1]

July 11, 1902.

Nos. 12,989—(160).

## Marriage—Presumption.

In the absence of any direct proof of a marriage contract, marriage may be inferred from cohabitation as husband and wife, but such presumption does not arise unless the cohabitation is matrimonial.

[1] Reported in 91 N. W. 428.

**Same—Declarations.**

A marriage contract will not be presumed from occasional admissions and declarations, and from cohabitation secretly conducted.

**Evidence—Charge to Jury.**

Evidence examined, and found to establish conclusively that no marriage contract existed in this case; hence it was error without prejudice to charge the jury that there was evidence in the case tending to show marriage by general reputation.

**Admission of Evidence.**

Certain rulings as to the admissibility of testimony reviewed, and found to contain no error.

Appeal by defendant from an order of the district court for Hennepin county, Simpson, J., denying a motion for a new trial. Affirmed.

*Wm. P. Roberts,* for appellant.

*W. A. McDowell,* for respondents.

LEWIS, J.

William E. Forrest died December 28, 1900, leaving life insurance in the sum of $2,000. This action was brought by his heirs at law against the defendant, who claims to be his wife, for the purpose of determining who is entitled to the money. The only question before the trial court was whether defendant was in fact the wife of Forrest at the time of his decease. The question was determined by the jury adversely to defendant, and she appealed, assigning as error, among other things, the refusal of the court to give certain requests, and error of the court in certain instructions.

The record discloses that in 1893, when they first met, Mr. Forrest was about fifty-five and appellant eighteen years of age. Appellant was then making her home with a married sister, who had brought her up from childhood, and during the month of October, 1894, Mr. Forrest had asked the sister's consent to his marriage with appellant. A witness testified that he had known Forrest and met him almost every day for sixteen years, and that while he was residing on Hennepin avenue he called appellant his wife in her presence. This witness also stated that he supposed appellant was the wife of Forrest, but was unable to fix any par-

ticular date or place other than as above stated when Forrest referred to appellant as his wife. This witness seemed to have drawn the conclusion that the parties were married from the fact that he saw them together frequently, and on one or two occasions Forrest had referred to her as his wife. Another witness—superintendent of the Lakewood Cemetery—testified that he was not very well acquainted with Mr. Forrest, but on one occasion had been informed by him that he was married to appellant. A merchant tailor testified that he knew Forrest for the period of eight or nine years, but not intimately, and testified that he had met him on the street upon one occasion, and congratulated him upon being married to appellant, and that Forrest acknowledged the marriage. A physician testified that in 1894 Forrest had introduced appellant to him as his wife on one occasion, and that he had in conversation at other times referred to her as such. This witness also testified that at that time the parties were living together. Another witness testified that in 1898 Forrest introduced appellant to her as his wife. Another physician testified that the parties called upon him in 1897 for treatment, and that Forrest referred to appellant as his wife. Another witness—a real estate agent—testified that in 1900 he rented a flat to Forrest, and that on that and subsequent occasions he referred to his wife as desiring such and such things done about the house.

On the other hand, it appears from the testimony that appellant always went under the name of Miss Miller or Maud Miller among the occupants of the various houses occupied, and among the friends and acquaintances they met in their public relation. He was spoken of as her uncle, and she as his niece. Appellant testified that from October, 1894, until the death of Mr. Forrest they cohabited together, living in different flats and boarding houses in the city of Minneapolis, but admitted that they ostensibly occupied adjoining rooms, and that they studiously avoided disclosing their true relations to the people with whom they came in immediate contact. The reason given by appellant for this conduct was that Mr. Forrest was sensitive about the difference in their ages. To establish the marriage contract appellant relies upon her testi-

mony that the parties had continuously cohabited together for the period of six years immediately prior to Mr. Forrest's death, and, further, upon the express admissions and declarations by deceased to the effect that appellant was his wife, and that the marriage relation existed between them. There was no attempt to establish the fact of marriage by general repute or reputation, and it is conceded by appellant that there is no evidence in the case to establish any such general reputation. Upon this theory of the case appellant requested the court to charge the jury as follows:

"3. The jury are further instructed that it is competent to prove marriage by evidence of cohabitation as married persons, by admissions of the deceased husband, or by any circumstantial or presumptive evidence from which the fact of marriage may be inferred."

"5. The jury are further instructed that the policy of the law favors matrimony, rather than concubinage, and that in controverted cases, where there is conflicting evidence, every reasonable inference is to be allowed to uphold the marriage."

"6. The jury are further instructed that the mere fact that the parties may have agreed to keep the marriage secret from the general public while acknowledging it to others does not invalidate it."

These requests were refused, and the court instructed the jury as follows:

"The defendant in this case relies in support of the agreement upon the proof offered of cohabitation between her and William E. Forrest, continued for a long number of years; the acknowledgments by William E. Forrest of her as his wife, and by repute among the relatives of the parties and some of their intimate friends that they were man and wife. * * * It would not usually be admissible to have testimony offered as to whether it was a matter of general reputation that a contract was entered into; but in the case of marriage, owing to the peculiarity of relationship, it has become a settled principle of law that, where parties cohabit together, in order to give a character to that cohabitation, in order to aid people to determine whether it is an honest cohabitation in matrimony or the illicit relationship of concubinage, that the general repute as to that relationship among the relatives and friends may be offered for the purpose of aiding those whose duty it is to determine what the relationship was in making that determination."

The court further charged the jury that, in order to base a finding of marriage upon the mere fact of cohabitation and general repute alone, the reputation should be of one character, and that the defendant was attempting to give a certain character to the relationship between herself and Mr. Forrest by a general reputation; and if it was apparent that there was no general reputation of one character, but that some people drew the inference that their cohabitation was legitimate and others that it was not, then the reputation would not tend to characterize the cohabitation. Again, the court stated that, in order to justify the opinion that the cohabitation was that of married people, that reputation must be uniform among the relatives and friends. At another time the court stated to the jury that in determining whether the relationship between the parties was that of marriage or otherwise they should take into consideration all the evidence.

As a whole, the court laid down the correct proposition of law, although not strictly applicable to the facts of this case. The court submitted to the jury the question of determining the nature of the cohabitation from the general reputation of the parties in the community in which they lived, whereas there was no evidence in the case in reference to general reputation as bearing upon marriage. The appellant rests her case wholly upon the fact of cohabitation, as testified to by her, and upon the express acknowledgments of his marriage to appellant by deceased.

In the first place, it must be clearly borne in mind that there is no direct evidence of a marriage contract. Appellant herself was prevented from testifying to that fact by reason of the statute which closed her mouth in reference to conversations taking place between herself and Mr. Forrest. No witness heard it and there is no contract in writing. The fact of the marriage is sought to be established purely by the inference or presumption which arises from the conduct of the parties. First, as to cohabitation. It is true that, where persons cohabit together as husband and wife in the matrimonial relation, and hold out each other as such in the community in which they reside, then they will be presumed to be husband and wife, in the absence of any direct evidence of a

marriage contract. But, in order to establish such inference, it is the universal holding that the cohabitation must in all respects be matrimonial. In this case we have the appellant's own testimony of the fact that she cohabited with Mr. Forrest continuously for six years. But she admitted that during that time she passed as his niece, was known by her maiden name, and that their true relations were kept from the knowledge of the people with whom they lived. While it is not necessary to go so far as to say that this condition raised the presumption that their relations were illegitimate, it certainly does not establish a presumption that the relation was matrimonial. Therefore, to give appellant all that can be conceded, no presumption will be drawn either one way or the other from the mere fact of cohabitation, as testified to by her.

If no presumption arises from such conduct, the court did not err in advising the jury that cohabitation could not be characterized when the reputation of the parties as to its true relation was divided in the community in which they lived. These general principles are illustrated in the following cases: Eldred v. Eldred, 97 Va. 606, 34 S. E. 477, and Wallace's Case, 49 N. J. Eq. 530, 25 Atl. 260. It follows that the fact that the parties agreed to keep the marriage secret must be considered in ascertaining whether there was a marriage. In Hulett v. Carey, 66 Minn. 327, 337, 69 N. W. 31, it was held that an agreement to keep the marriage secret does not invalidate it; but in that case there was evidence of the marriage by contract in writing, and the fact of marriage did not rest upon the mere presumption of the conduct of the parties.

The requests which were refused by the court would be proper in certain cases, but have no application to the facts in this case, because, while the law favors matrimony, rather than an illicit relation, and where there is conflicting evidence every reasonable inference is to be allowed to uphold the marriage, yet in this case there is no conflict of testimony. On appellant's own evidence it conclusively appears that the facts relied upon to establish marriage are insufficient, and therefore, conceding that the court may have technically erred in submitting the question upon the basis

of general reputation, there is no reversible error, for the reason that the evidence conclusively establishes the finding of the jury.

The plaintiffs introduced in evidence a certain mortgage which had been executed by Mr. Forrest, in which he was described as a widower, and to which appellant had subscribed her maiden name as a witness. This mortgage was executed during the time the parties were living together, and its purpose was to show that appellant was single at the time she signed as a witness, and that Mr. Forrest was a single man. It was clearly competent for that purpose. If their declarations and admissions by way of introduction among their friends are competent evidence to establish a marriage contract, then their declarations in writing during that period whereby they declare themselves to be single are also competent. In the case of Hulett v. Carey, supra, a document executed by the deceased, in which he was described as a single man, was held to be incompetent; but the issue in that case was whether or not the deceased executed a certain written marriage contract. All of the other assignments of error referred to are necessarily disposed of by what has been said.

The result we have arrived at is most unfortunate for appellant. According to the testimony of witnesses and the circumstances surrounding the case, it appears that she believed she had entered into marriage relations with Mr. Forrest, and, having been faithful to him, and nursed him through his last illness, it is a great hardship that she has been unable to establish the fact of the marriage contract. But the rules of law cannot be changed to suit the exigencies of this particular case simply because the parties have acted in good faith.

Order affirmed.