# DON LYNN SHATTUCK v. ESTATE OF ARTHUR C. SHATTUCK.[1]

May 31, 1912.

Nos. 17,564—(70).

**Marriage — evidence.**

Evidence considered, and *held* sufficient to sustain the verdict to the effect that respondent was the common-law wife of decedent at the time of his death.

**Evidence — charge.**

The record presents no reversible errors either in the admission of evidence or in the instructions to the jury.

Don Lynn Shattuck appealed to the district court for Hennepin county from an order of the probate court for that county allowing the will of Arthur C. Shattuck and appointing as executors the persons named in the will. The appeal was tried before Giddings, J., and a jury who answered "Yes" to the question submitted to them: "Did Don Lynn Shattuck, the objector, become the lawful spouse of Arthur C. Shattuck after the date of the proposed will and before the death of said Arthur C. Shattuck? From an order denying the motion in behalf of the Estate of Arthur C. Shattuck, deceased, for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*N. H. McDonald* and *F. E. Clinite,* for appellant.
*Wilson, Mercer, Swan, Ware & Stinchfield,* for respondent.

BROWN, J.

Arthur C. Shattuck, a resident of this state, died at his home in Minneapolis on the nineteenth day of May, 1910, leaving a last will and testament in and by which he devised and bequeathed his prop-

[1] Reported in 136 N. W. 409.

[Note] As to common-law marriage, see note in 2 L.R.A.(N.S.) 353.

erty to certain of his relatives. The will was subsequently presented to the probate court for allowance, and respondent herein appeared and presented a claim to the estate as the surviving wife of decedent. No provision was made for her by the will, and she was in no way recognized therein as the wife of decedent. The sole question litigated in the probate court was whether respondent was the widow of deceased. The probate court found against her contentions, and she appealed to the district court, where a verdict was returned in her favor. A motion for judgment or a new trial was denied. The case comes to this court upon an appeal from that order.

It is contended by appellant (1) that the court below erred in denying the motion for judgment notwithstanding the verdict for the reason, as claimed, that the evidence is wholly insufficient to support the conclusion that respondent and decedent ever became husband and wife; and (2) if that contention be not sustained, that a new trial should have been granted for errors committed on the trial to the prejudice of appellant.

1. Our examination of the evidence leads to the conclusion that the question in issue was properly submitted to the jury, and that the verdict is fairly supported by sufficient competent evidence. It would serve no useful purpose to discuss the evidence in detail, or the facts at any considerable length. The case is brought within the rules sustaining respondent's contention that she was the lawful wife of decedent, and the court properly denied appellant's motion for judgment notwithstanding the verdict. There was no ceremonial marriage solemnized in conformity with the statutes of the state, and the marriage relation between them arose, if at all, at common law, by their mutual assent or agreement to become husband and wife, and their conduct in subsequently assuming that relation. Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L.R.A. 384, 61 Am. St. 419.

The evidence shows, or tends to show, that the parties had for some years been intimate associates and friends, though no improper conduct transpired between them prior to the date on which it is claimed the marriage agreement was entered into. At least the jury was justified from the evidence in so finding. When the acquaintance be-

tween them first arose, respondent was a married woman, residing and doing business at Minneapolis as a fashionable dressmaker. Her husband resided in Canada. Decedent was a bachelor, and by occupation a traveling salesman. Respondent was subsequently divorced, and she claims that some time in the spring of 1909 the parties mutually agreed to become husband and wife, and thereafter and until the death of decedent lived and cohabited together as such. She was not permitted to testify expressly to the agreement, but she was sufficiently corroborated in respect thereto by their subsequent cohabitation, and other evidence of repute. They rented apartments in which they thereafter resided, and were understood by the landlord of the premises and his wife to be husband and wife. Decedent made reference to his relations with respondent in letters written by him to relatives, and one of the relatives so informed advised decedent that under the law of some of the states respondent was his common-law wife. In his letters to other relatives decedent spoke in tender terms of respondent, though in none of those contained in the record did he refer to her as his wife, or that he had married her. He also informed one of his close friends that he intended to marry respondent. Other witnesses who knew the parties gave evidence of their cohabitation, their demeanor toward each other, and that they understood that they were husband and wife. Respondent nursed and cared for decedent at all times when ill subsequent to the alleged agreement of marriage, and rendered such aid and comfort during his last illness as an affectionate wife might be expected to render under such circumstances.

It is probably true that general publicity was not given to the relations now relied upon as establishing the marriage, but that fact is not conclusive that the relation did not in fact exist. Hulett v. Carey, supra. There are also items of evidence offered by appellant which tend quite strongly to negative the existence of the relation of husband and wife, but the force and effect thereof was for the consideration of the jury. We need not refer specially to this testimony. It is sufficient to say that we have given it due consideration, and are of opinion that it does not as a matter of law

overcome that offered by respondent tending to establish the marriage agreement. The evidence taken as a whole was squarely conflicting and presented a question of fact, and it was for the trial court and jury to determine the preponderance thereof.

2. Several assignments challenge certain rulings of the court in the admission of evidence and portions of the charge to the jury. These we have carefully considered and discover no sufficient reason for a reversal.

Respondent was permitted to state to the jury certain reasons why the alleged marriage agreement was to a certain extent not given general publicity, namely, that her son, then living but since deceased, was opposed to her second marriage, and she desired to keep the fact from him. This evidence was under the rule stated in the Hulett case, supra, competent and proper. The fact of secrecy is at most evidence that no agreement of marriage was entered into. Other evidence complained of as improper and prejudicial was given by witnesses Dougherty and Mills, and tended to show conduct between the parties subsequent to the date of the alleged agreement of marriage, from which an inference of marriage might arise, and was proper as corroborative of respondent's theory of the case.

A large number of assignments relate to the instructions of the trial court. We have examined them and find no reversible error. The charge of the court was somewhat extended, and dealt, as did the instructions in the Hulett case, quite fully with every feature of the issue, the pertinence of particular evidence, its bearing upon the general question, and stated to the jury clearly the rules of law guiding their consideration of the case. It is quite clear, taking the charge as a whole, that the learned trial court did not intend the jury to understand that, in the absence of evidence of an express agreement of marriage, the marriage relation could be found from either cohabitation or general repute. While one statement in the charge seems to so state, other portions indicate a purpose to require both facts to be established. At any rate, we find no ground for reversal upon this question.

No exceptions were taken to the charge at the trial, and, if counsel thought the particular statement was likely to mislead the jury,

attention should have been called to the matter, to the end that a correction might be made. The other objections to the charge present no matter of substance, and do not require special mention.

Order affirmed.