ANNA BELLINGER *et al.* Appellants, *vs.* JOHN F. DEVINE, Admr. *et al.* Appellees.

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. PRACTICE—*section 61 of Practice act construed.* Section 61 of the Practice act, relating to the submission to the court of propositions of law and findings of fact in cases tried by the court without a jury, applies only to cases where the parties are entitled to a jury but waive that right and agree to a trial by the court.

2. SAME—*when section 61 of the Practice act does not apply.* A proceeding by petition to set aside an order approving a children's award is not within the constitutional guaranty of the right to trial by jury, and hence the provisions of section 61 of the Practice act concerning the submission of propositions of law and findings of fact do not apply, and in such case the whole record is before the Supreme Court for review, without restriction to the action of the trial court on propositions of law or findings of fact.

3. EVIDENCE—*genuineness of signature is not to be determined solely by comparison with one admitted to be genuine.* Whether the signature to an application for a marriage license is genuine will not be determined solely by comparing such signature with one admitted to be genuine, but all the facts and circumstances appearing in the case will be considered, in connection with this evidence, in determining the question.

4. SAME—*what evidence does not prove that party participated in marriage ceremony.* Testimony that the deceased, at the time his supposed wife died, took possession of a tin box and some papers which were in her room, and that after the deceased died a tin box was produced by an inspector of police containing a marriage certificate bearing the names of the deceased and of his supposed wife, does not prove that the deceased participated in the marriage ceremony, where the box introduced in evidence is not identified as the one the deceased took possession of, and there is no proof that the box containing the marriage certificate was found among the effects of the deceased at his death or how it got into the possession of the police inspector.

5. SAME—*statements by deceased recognizing children as his own are admissible against the persons claiming as heirs-at-law.* Statements by a person, since deceased, that a certain woman was his wife and that her children were his are admissible as declarations against interest, since he thereby assumes the responsibility of a father and becomes liable for their support, and being admissible against the declarant in any suit in which he might be a

party and in which such an investigation is pertinent, they are admissible against his heirs-at-law in a proceeding by them to set aside an award by the probate court to such children.

6. SAME—*when no presumption is necessary to prove identity of applicant for marriage license.* The fact that there are mis-statements as to parentage and place and date of birth of an applicant for a marriage license in the application supposed to bear his signature does not render it necessary to indulge in any presumptions in order to overcome the effect of such mis-statements, where there is sufficient competent evidence in the record to show, notwithstanding these mis-statements, that the deceased was, in fact, the person who made the application.

7. DIVORCE—*neither the bill nor publication notice need give the full name of the complainant.* The fact that in the bill for divorce and in the publication notice the complainant is described as "B. N. Riggs" whereas she is known as "Beatrice K. Riggs" does not affect the jurisdiction of the court where the name of the defendant is properly given; and this is true though the statute as to service by publication requires the published notice to state "the names of the parties."

8. NAMES—*middle initial is not part of a name.* The common law recognizes but one christian name, and the presence or absence of a middle initial, or a mistake in regard thereto, is not material. (*Illinois Central Railroad Co.* v. *Hasenwinkle,* 232 Ill. 224, followed.)

APPEAL from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

KING, BROWER & HURLBUT, (SAMUEL B. KING, of counsel,) for appellants.

A. A. ROLF, (A. E. STEIN, of counsel,) for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Levi A. Raven died intestate in the city of Chicago in the month of March, 1911. He had for a number of years been a resident of that city and was engaged in business there at 1425 State street. Letters of administration on his estate were granted to the public administrator on April 1, 1911. On May 15, 1911, a children's award in

the sum of $1500 was made in the probate court of Cook county to Lewis A. Raven and Frances May Raven Wall, as minor children of the deceased. Thereafter the appellants, Anna Bellinger and Esther Raven, sisters of Levi A. Raven, filed their petition in the probate court of Cook county, praying that they be adjudged to be his only heirs-at-law and next of kin and that the order approving the children's award be set aside. From the order of the probate court denying the petition appellants appealed to the circuit court of Cook county, and upon a hearing in the circuit court the petition was dismissed. From that judgment this appeal has been perfected, the case having been brought directly to this court for the reason that a freehold is involved.

Upon the trial in the circuit court propositions of law and findings of fact were submitted to and passed upon by the court on behalf of appellants, and various assignments of error are predicated upon the action of the court in holding, and in refusing to hold, various of the propositions and findings thus submitted. The provision of section 61 of the Practice act relating to the submission to the court of propositions of law and findings of fact in cases tried by the court without a jury applies only to cases where the parties are entitled to a jury trial but waive that right and agree to a trial before the court without the intervention of a jury. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 231 Ill. 112; *Schofield* v. *Thomas,* 236 id. 417.) This proceeding was unknown to the common law and therefore does not come within the constitutional guaranty of the right to trial by jury. As the statute does not expressly provide for a trial by jury in this class of cases the parties were not entitled to have a jury trial, and the cause must necessarily be tried by the court unless the court should, in its discretion, order a trial by jury. (Hurd's Stat. 1913, chap. 37, par. 222.) The provision of the Practice act relating to the submis-

sion of propositions of law and findings of fact does not apply, and the action of the court in holding, or refusing to hold, any of the propositions or findings submitted presents no question for review. The whole record is before us, and our inquiry as to the correctness of the judgment entered is not restricted or in any way governed by the propositions of law or findings of fact held or refused by the court.

It is not contradicted that Levi A. Raven was born in England on February 18, 1850, and was the son of William Raven, a tailor by trade, and Hephzibah Raven, (*nee* Prime,) both of whom were born in Willingham, Cambridgeshire, England, and that appellants are his only surviving sisters, his brothers and other sisters having died prior to his decease, without issue. The evidence introduced on behalf of appellants tended to prove that they were in frequent communication with Raven during his lifetime and were the recipients of his bounty; that they had never heard that he had contracted a marriage with any person until the claim of the existence of a marriage was made after his death, and that in the presence of others, at a time after it is alleged his marriage took place, Raven stated to them that he had never been married. The claim on the part of the appellees Lewis A. Raven and Frances May Raven Wall is, that Levi A. Raven was married to their mother, Beatrice K. Riggs, at Hammond, Indiana, on October 15, 1906. The contentions of the parties can be best understood by giving a chronological statement of the facts which the evidence on their behalf tends to prove.

Beatrice K. Riggs was a native of Ireland, and her maiden name was Bridget Kilmartin. She came to the United States when about twenty-two years of age, and under the name of Bridget Kilmartin was married to Patrick Cunningham in the State of Iowa. It is conceded that she was divorced from Cunningham, and she thereafter, in

1888, contracted a marriage with John W. Riggs, a negro, of the city of Chicago. Some time after her marriage with Cunningham she discarded the name of Bridget and assumed the name of Beatrice instead, and was thereafter until her death known by that name. Levi A. Raven was engaged in the manufacture and sale of a stock food or condition powder at 1425 State street, in the city of Chicago. About the year 1898 Riggs entered the employ of Raven as a driver of one of his teams and remained in his employ for some time thereafter. It does not clearly appear from the record just when he ceased working for Raven. In 1900 Beatrice K. Riggs, under the name of B. N. Riggs, secured a decree of divorce from Riggs in Cook county. Raven evidently became acquainted with Mrs. Riggs during the time her husband was employed by him and meretricious sexual relations were established between them. On December 5, 1904, Mrs. Riggs gave birth to appellee Lewis A. Raven, and on December 28, 1904, filed her complaint before a justice of the peace of Cook county against Levi A. Raven on a charge of bastardy. On September 22, 1904, she filed her declaration in a suit for breach of promise which she had theretofore instituted against Raven in the superior court of Cook county, wherein she charged that he had promised to marry her but had refused to do so. As a result of the bastardy complaint Raven was placed under bonds for his appearance in the criminal court of Cook county. Thereafter, on January 5, 1906, by a written settlement agreement entered into between Raven and Mrs. Riggs, the bastardy charge and the suit for breach of promise were settled. In and by this settlement it was agreed that Raven should pay Mrs. Riggs $20 upon that date and $20 on the first of each month thereafter until December 1, 1910, and $10 per month on the first day of January, 1911, and on the first day of each month thereafter until December 1, 1915. Raven further agreed to convey to Mrs. Riggs, by warranty deed, a resi-

dence property described therein for the period of her nat-
ural life, with remainder in fee simple to the child, to
whom she had given the name of Lewis Alfred Raven,
his heirs and assigns. The agreement contained, among
others, the following recital: "Nothing herein contained,
or in any of the instruments or acts done in pursuance
thereof, shall be deemed an assent by Levi A. Raven to
the assumption by said child of Beatrice K. Riggs of the
name of Raven or a recognition of his right to bear said
name." Raven made the conveyance of the real estate
agreed to be conveyed, pursuant to this agreement. The
record is silent as to the payment of the sums of money
therein provided to be paid. Some time after this settle-
ment was made the meretricious relations of Raven and
Mrs. Riggs were resumed. On October 9, 1906, applica-
tion was made by Beatrice K. Riggs and one representing
himself to be Levi A. Raven to the clerk of the circuit
court of Lake county, Indiana, for a marriage license.
The laws of the State of Indiana having been complied
with in making the application, a license was issued and
a marriage ceremony was performed on October 15 by
W. A. Jordan, a justice of the peace at Hammond, In-
diana, who duly made return of the fact that he had per-
formed this ceremony to the clerk of the circuit court.

The only question to be determined is whether the de-
ceased was the Levi A. Raven who made application for
the marriage license in Lake county, Indiana, and was
united in marriage with Beatrice K. Riggs before justice
of the peace Jordan. There is no proof that either Levi
A. Raven, deceased, or Beatrice K. Riggs was in Ham-
mond or any other part of Lake county, either on the 9th
or 15th of October, 1906, or at any other time, other than
the record proof in reference to the marriage. It is not
denied, however, that the female application for the mar-
riage license was signed by Beatrice K. Riggs or that the
signature to her application is her genuine signature. It

is denied on the part of appellants that the deceased was the same Levi A. Raven who signed the male application. Neither the clerk nor the justice of the peace has any independent recollection of the issuance of the marriage license or the performing of the marriage ceremony. The only knowledge they have is that shown from the records. In the application for the marriage license on the part of the male, Levi A. Raven is described as having been born in the State of New York on October 31, 1851. His residence is given as Chicago and his occupation as a merchant. The full name of his father is given as John F. Raven, his birthplace as New Jersey and his occupation that of a farmer. The maiden name of his mother is given as Mary A. Drake, her birthplace New Jersey, and it is stated that both of his parents are dead. The application then states that this is not his first marriage; that he had been married once before, and that that marriage had been dissolved by death in 1901. It will thus be seen that this description does not identify the deceased as the Levi A. Raven who made the application. This application was signed and sworn to, and under the laws of Indiana it was a criminal offense to make a false statement in an application for a marriage license.

A photographic copy of this application, containing the signature "Levi A. Raven" to the application and to the oath attached thereto, was admitted in evidence. Witnesses who were familiar with the handwriting of Levi A. Raven inspected the original application and also the photographic copy. Handwriting experts also inspected the original application, the photographic copy thereof, and various checks and other papers containing the admittedly genuine signature of the deceased. Kate McDonald, who for many years had been in the employ of Raven and was familiar with his handwriting, testified that the signatures attached to the application for the marriage license and to the oath attached thereto were not his genuine signatures.

A number of handwriting experts testified on behalf of appellants, from their comparison of these signatures with the admittedly genuine signatures of Raven, that the signatures on the application were not his genuine signatures. One handwriting expert testified on behalf of the appellees that in his judgment the signatures on the application were the genuine signatures of Levi A. Raven. This witness testified that while these signatures were not similar to the admittedly genuine signatures of Levi A. Raven, they were all written by the same person, and that the signatures found on the application were evidently written by one attempting to disguise his handwriting. In support of this conclusion he called attention to a number of points of similarity which he claims were due to the unconscious exercise of peculiarities and habits by the writer. Original exhibits, consisting of a letter, a number of checks, the original agreement entered into between Raven and Mrs. Riggs on January 5, 1906, the written consent of Raven to the adoption by Mrs. A. R. Wall and her husband of his infant daughter, Frances May Raven, all of them containing the admittedly genuine signatures of Raven and being the same examined by the various witnesses, and the photographic copy of the male application for a marriage license, have been certified up by the trial court for our inspection. While the signatures to the application for marriage license are quite unlike the signatures which are admitted to be genuine, there are some points of similarity. Whether the deceased signed the name Levi A. Raven to the application for a marriage license should not, however, be determined from this evidence alone, but all the facts and circumstances appearing in the case should be considered in connection with this evidence in determining whether Levi A. Raven, the deceased, made this application for a marriage license.

The record does not disclose the circumstances under which Levi A. Raven died, but it is intimated that he was

supposed to have been murdered. An attorney represent-
ing the public administrator testified on behalf of appel-
lees that in the early part of April he called on Inspector
Wheeler at the Harrison street police station, who turned
over to him a tin box, in which the witness found a mar-
riage certificate executed by W. A. Jordan, a justice of the
peace, certifying that he had united in marriage Levi A.
Raven and Beatrice K. Riggs on October 15, 1906; that
in this box there were other miscellaneous papers, one of
which was a grammar-school diploma in the name of Olive
Raven, a daughter of Beatrice K. Riggs. Assuming that
this marriage certificate was found among the effects of
Levi A. Raven, deceased, appellees argue that it is strong
proof of the fact that the deceased was the Levi A. Raven
who applied for the marriage license in Lake county, In-
diana, and was united in marriage with Beatrice K. Riggs
by the justice of the peace, Jordan. Appellees failed to
show, however, that this tin box containing the marriage
certificate was found among the effects of Levi A. Raven
after his death. The attorney for the public administrator
testified that he had received it from Inspector Wheeler.
No member of the police department was called to show
how this box came into the possession of the department.
Beatrice K. Raven, who will be hereinafter referred to by
that name, died about July 4, 1908, after having given
birth to appellee Frances May Raven Wall on July 1, 1908.
At the time of her death she was attended by a nurse, who
testified that immediately after her death Levi A. Raven,
the deceased, took possession of a tin box and some papers
which were in the room in which Mrs. Raven died. She
did not notice the box closely, however, and was unable to
identify the box produced on the trial as the one the de-
ceased took away with him. If, as appellees claim, this
box containing the marriage certificate was kept in the pos-
session of the deceased from the time of the death of their
mother until the death of Levi A. Raven and was found

among his effects after his death, it would be strongly corroborative of their contention that the deceased was the Levi A. Raven who was united in marriage with their mother at Hammond, Indiana, October 15, 1906. Without any proof as to how this box came into the possession of Inspector Wheeler the possession of the marriage certificate by the deceased is not shown, and this proof is not helpful in determining the identity of the Levi A. Raven who participated in the marriage ceremony at Hammond.

After the alleged marriage of Raven to Mrs. Riggs he continued his relations with her as theretofore. During that time she resided in the premises conveyed to her as a result of the settlement made January 5, 1906. These premises were nine or ten miles from the place of business ·of the deceased. During this time Raven continued to sleep in his store on State street, as he had done theretofore, and took his meals at a boarding house next door. He frequently visited Mrs. Raven, however, and it is shown that he contributed to the support of the family, which consisted of Mrs. Raven, the boy Lewis A. Raven, and a daughter, Olive, who was alleged in the proceedings for divorce against John W. Riggs to be the daughter of Riggs but who testified in this proceeding that the name of her father was Andrew Sanchez. Prior to the birth of the child Frances May Raven Wall the mother was ill for some time, and the evidence tends to show that during that time Raven visited her daily for a period of six weeks. ·

Mrs. A. R. Wall, who with her husband afterward adopted the child Frances and who resided in the same building with Mrs. Raven, testified that she met Raven there on various occasions and that he had addressed his alleged wife as "Mrs. Raven." After the death of Mrs. Raven, Levi A. Raven at once importuned Mrs. Wall to take charge of the baby, Frances, and care for her. An arrangement was made whereby Mrs. Wall agreed to take care of the child for a consideration to be paid by Raven.

Later, when the little girl was about a year and a half old, proceedings were instituted in the county court of Cook county by Mrs. Wall and her husband to adopt the child, who was designated in these proceedings as "Frances May Raven." The statutory notice was served upon Raven, who was designated as the father of the child, and he thereupon, on December 23, 1909, subscribed and swore to the following receipt of notice and consent of adoption: "This will certify that I have this day received a copy of the above notice, and I hereby consent that a decree may be entered for the legal adoption of my said daughter, Frances May Raven, by A. R. Wall and John Wall, her husband."

Immediately upon the death of Mrs. Raven, Levi A. Raven secured the services of William W. Fern, an undertaker, to whom he stated that he wanted to purchase a casket for his wife. The casket was purchased, the funeral arrangements made, and the expense of the same was paid by Raven. August Yandel, a grocer, testified that he went to Raven's office to collect a grocery bill owing by Mrs. Raven at the time of her death, and that Raven told him he had given his wife the money to pay the bill and she should have paid it. Immediately after the death of Mrs. Raven, Levi A. Raven changed his method of living and took up his residence at 2952 South Park avenue, in the city of Chicago, to which place he removed the girl known as Olive Raven and the boy, Lewis A. Raven. These three lived there together, constituting the family, until the time of Raven's death.

Madeline Nielsen, a girl fifteen years of age, testified that she lived at 2946 South Park avenue in 1908; that she knew Raven and the two children; that the week after Raven moved to 2952 South Park avenue he stated to her that his wife had died a month before and on account of her death it was lonesome for Olive and the little boy. Martha Nielsen, a sister of Madeline Nielsen, testified that

on one occasion when Olive was sick she went there to prepare supper for Raven; that while there he said to her, "Olive hasn't been herself since my wife died," and that he referred to his wife as the mother of the two children. Mrs. Lizzie Doherty testified that she was a tenant of Raven; that in 1910, while riding with him and the little boy, in speaking of Olive he said, "My wife was so headstrong you couldn't tell her anything, and Olive is just like her;" also that during the summer of that year·she had a conversation with the deceased in his home, in which he stated, referring to a picture standing upon the piano, "This is my wife, Mrs. Doherty; who does Buzzy [a nickname for the boy, Lewis,] favor?—me or his mother?" also that in the fall of that year he stated to her, "My wife died and I bought this place for a home for Olive and Buzzy." Louis Rosenberg testified that on one occasion when he was calling on Olive, Raven, in Olive's presence, referred to a picture of Olive's mother, which was standing on the piano, as that of his wife.

It is contended on behalf of appellants that the above statements made by Levi A. Raven after the death of Mrs. Raven, and after such relationship as they had sustained had ceased, were incompetent. We are clearly of the opinion that these statements were properly admitted as declarations made by Raven against his interest. If no marriage relation existed the appellees were the illegitimate children of Beatrice K. Riggs and Raven sustained no further responsibility concerning them than that imposed by the Bastardy act. By stating that the mother of these children was his wife he admitted his status as the legal parent of these two children and thereby assumed all the obligations of a father towards them. He was liable for their support and maintenance during minority, and thereafter if for any reason they were incapable of supporting themselves, and he was obliged to see that these children would never become a charge upon the public. Being declarations made

against his interest, they were admissible against him in any suit in which he might be a party and such an investigation be pertinent, and being admissible against him they were admissible as against his sisters, who in this proceeding claim to be his heirs-at-law.

It is not necessary, as the appellants contend, to base a presumption upon a presumption in order to establish the identity of the applicant for the marriage license in Lake county, Indiana, as that of the deceased. It is conclusively shown from this record that the parentage of the deceased was improperly stated in the application and his own birthplace and the date of his birth were not given correctly. It is not necessary to indulge in any presumptions in order to overcome the effect of the statements contained in the application for the marriage license. The only question is whether there is sufficient competent evidence in the record to show, notwithstanding these mis-statements, that Levi A. Raven, the deceased, was the person who made this application for a marriage license.

From the whole evidence we are of the opinion that the court properly found the issues for appellees and dismissed the petition. While it is true, as appellants contend, that sexual relations shown to have been meretricious in their inception are presumed to continue meretricious until they are proven to be matrimonial, and that cohabitation does not create a presumption of marriage unless matrimonial association and matrimonial habits be proved, we think there is sufficient proof in the record to satisfactorily establish the marriage of Levi A. Raven with Beatrice K. Riggs on October 15, 1906. The facts that Raven addressed her as "Mrs. Raven" in the presence of Mrs. Wall; that he supported the family; that he took charge of the two children, Olive and Lewis, after the death of their mother and made a home for them; that he recognized Frances May Raven as his legal offspring and consented, as her father, to her adoption by Mrs. Wall,

together with all the other facts shown, are sufficient to establish the identity of the Levi A. Raven who secured the marriage license in Lake county, Indiana, and thereafter was united in marriage with Beatrice K. Riggs at Hammond, with that of Levi A. Raven, the deceased.

At the time of the settlement of the bastardy proceeding Levi A. Raven was particular to have it expressly stated that he had not consented to the child Lewis assuming the name of Raven and disclaimed the right of the ·child to bear that name. At that time he was carefully guarding what he considered to be his rights. If, as appellants contend, no marriage ceremony had ever been performed between Raven and Beatrice K. Riggs, the child born July 1, 1908, had no further claim upon Raven and bore no different relationship to him than the child Lewis A. Raven. We find the deceased, however, assuming an entirely different attitude towards this child. He freely acknowledged himself as the legal father of the child, consented, as such father, to its adoption by Mr. and Mrs. Wall, and recognized the name of this child to be Frances May Raven.

The testimony of the appellants that their brother had stated to them that he had never been married is explained by the testimony of Mrs. Wall, who says that when Raven first asked her, immediately after the death of his wife, to take charge of the baby, Frances, and she asked him why he did not ask his sisters to take charge of her, he replied that he did not want his sisters to know he had been married. For some reason he evidently desired to conceal from his family the fact of this marriage, and this may account for the mis-statements as to his parentage in the application for the marriage license.

It is contended that even though a ceremonial marriage was entered into by Levi A. Raven and Beatrice K. Riggs at Hammond, Indiana, on October 15, 1906, it was void for the reason that the pretended divorce secured by Bea-

trice K. Riggs was void because of the lack of jurisdiction of the court. The divorce suit was brought in the name of B. N. Riggs, complainant. The solicitor for the complainant made affidavit that the defendant in the divorce proceeding on due inquiry could not be found so that process could be served upon him, and further that the place of residence of the said defendant was unknown and upon diligent inquiry could not be ascertained. Upon this affidavit substituted service by publication was had. It is now claimed that this service was ineffective and failed to give the court jurisdiction of the defendant, John W. Riggs, for the reason that at the time of the pendency of the divorce proceedings, and also before and after that time, Riggs was in the employ of Levi A. Raven, and this fact was known to his wife, Beatrice K. Riggs, and should have been known to her solicitor; that during the time of the pendency of this proceeding, and before and after that time, Beatrice K. Riggs not only knew that her husband was in the employ of Raven, but was receiving at least a part of his wages for her support, the same being paid directly to her by Raven. This claim is not borne out by the record. Kate McDonald was the only witness who testified to any facts upon which such a claim could be based. It is impossible to determine from her testimony the exact time Riggs entered the employ of Raven or when that employment ceased, and it is also impossible to determine during what period Mrs. Riggs received from Raven a part of the wages earned by her husband.

It is further claimed that the service by publication was ineffective for the reason that complainant was described, both in the bill of complaint and in the publication notice, as B. N. Riggs whereas her name was Beatrice K. Riggs. The appellants rely upon the statute authorizing service by publication upon a defendant whose place of residence is unknown, which requires the published notice to such defendant to state "the names of the parties," and contend

that the name "Bridget K." or "Beatrice K." was as much a part of the name of the complainant as "Riggs," and that the description of her as B. N. Riggs does not comply with the statute. The case of *Illinois Central Railroad Co.* v. *Hasenwinkle,* 232 Ill. 224, is decisive of this question. In that case notice of a condemnation proceeding was given to one "J. H. Burtis," who was described as a non-resident and the owner of the land condemned. It was held that this was equivalent to a notice to "J. Burtis," and bound the owner, whose name was "Joseph F. Burtis." In passing upon this question we there said: "The common law recognizes but one christian name, and a middle initial may be dropped or resumed or changed at pleasure. Its presence or absence or difference affects nothing. (*Gross* v. *Village of Grossdale,* 177 Ill. 248; *Claflin* v. *City of Chicago,* 178 id. 549.) While a letter of the alphabet does not constitute a name, yet the initial letter of the christian name is so commonly used that it is to be regarded, not as the name of some other person, but as an abbreviation of the christian name of the person intended.—*Lee* v. *Mendel,* 40 Ill. 359." In that case it will be observed that the question arose over the name of a defendant to whom notice was being given. In this case it is not denied that the defendant in the divorce proceeding was properly described by name. While it must be conceded that the better practice would ·be to give the full christian name of the parties to a suit, under the holding in the case above cited the use of the initial "B." was sufficient, and as the middle name or initial was no part of the name of the complainant it should be disregarded. The court had jurisdiction of the parties in the divorce proceeding, and that decree was valid.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*