# IN RE ESTATE OF FRANK FRITHIOF LUST (ALSO KNOWN AS FRANK GHELIN).
## CLARA JOHNSON AND OTHERS, RESPONDENTS.[1]

No. 28,819.

July 1, 1932.

[1]Reported in 243 N. W. 443.

M. H. Boutelle, A. H. David, and William M. Nash, for appellant.
Joseph J. Granbeck and F. M. Selander, for respondents.

OLSEN, J.

Marie Chapman, or Marie Chapman Ghelin, appeals from an order denying her alternative motion for judgment or a new trial. For convenience we refer to her as claimant.

Franz Frithiof Lust, known also as Frank Ghelin, a resident of Hennepin county, died on March 28, 1929, leaving an estate in said county. He died while abroad, leaving no legally executed will. Clara Johnson, a sister of the deceased, petitioned the probate court of said county for the appointment of the Minnesota Loan & Trust Company as administrator of the estate. Two other sisters and a brother of deceased thereafter joined with the petitioner in asking for the appointment of that company as administrator. The claimant appeared and opposed the appointment of the Minnesota Loan & Trust Company as administrator and asked that she be appointed as sole administratrix of the estate on the ground that she was the surviving spouse, the widow, of said deceased. The question of whether Marie Chapman was the wife of the deceased at the time of his death, and hence his surviving spouse, was tried in the probate court, and that court found that she was not the wife or surviving spouse of the decedent. That court then granted the petition for the appointment of the Minnesota Loan & Trust Company as administrator of the estate. Appeal was taken by Marie Chapman to the district court. In the district court the same question was tried to a jury, and the jury by its verdict found that she was not the wife or surviving spouse of decedent. The trial court has approved the verdict.

■ The sufficiency of the evidence to sustain the verdict is challenged. The evidence is lengthy, and we do not undertake to set it out. The question was one of fact, and we hold the evidence sufficient to sustain the verdict.

■ There remains the question of errors. A preliminary consideration of the nature and kind of proof required to prove the marriage may be of assistance in passing upon the claimed errors. There was no written contract of marriage as in Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 32, 34 L. R. A. 384, 61 A. S. R. 419. There was no civil or religious ceremony of marriage and no license to marry. The other party being dead, claimant could not and did not testify to any verbal contract of marriage, and no other witness testified to the making of any such contract by the parties. In that situation the claimant necessarily had to rely on circumstantial evidence to prove the contract of marriage. She had to prove the contract of marriage by what is referred to in the Hulett case [66 Minn. 333] as evidence of "habit and repute." The inquiry then is: What is proper evidence for that purpose? The rules as to what evidence is proper and necessary have been stated in various terms. In 38 C. J. p. 1316, § 89(2), it is stated that the agreement must be "consummated by their cohabitation as man and wife or their mutual assumption openly of marital duties and obligations." On p. 1318, § 91(c), it is stated:

"The common-law marriage requires an assumption by the parties of the rights and duties of the marital relation, in order to establish the existence and reality of the alleged consent thereto. That is to say there must be a cohabitation of the parties, matrimonial in nature, professed and open, such as will create some public recognition that their intentions were matrimonial." The cases are cited in the notes to these sections.

Where there is no proof of any express written or oral agreement, there must be evidence of cohabitation as man and wife, or the assumption openly of marital duties and obligations, continued for such time and to such an extent as reasonably to sustain the conclusion or inference that the parties have agreed to become and be

husband and wife. The cohabitation and conduct must be of some continuance and such as is usual between persons lawfully married. Heminway v. Miller, 87 Minn. 123, 91 N. W. 428; Haley v. Goodheart, 58 N. J. Eq. 368, 44 A. 193; Eldred v. Eldred, 97 Va. 606, 34 S. E. 477; Bellinger v. Devine, 269 Ill. 72, 109 N. E. 666; Yardley's Estate, 75 Pa. 207; Odd Fellows B. Assn. v. Carpenter, 17 R. I. 720, 24 A. 578; Dysart Peerage Case, 6 App. Cas. 489.

■ General reputation that the parties are married is not alone sufficient to prove marriage, but may be shown in connection with cohabitation and other circumstances. Osborne v. Ramsay (C. C. A.) 191 F. 114; Gorden v. Gorden, 283 Ill. 182, 119 N. E. 312; Peet v. Peet, 52 Mich. 464, 18 N. W. 220; Stevenson's Estate, 272 Pa. 291, 116 A. 162.

■ Where the claimant seeks to prove a common law marriage by circumstantial evidence, the oral or written admissions of the other party to the alleged contract, that the marriage exists, are admissible in evidence. Heminway v. Miller, 87 Minn. 123, 91 N. W. 428; Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 A. S. R. 419; People v. Imes, 110 Mich. 250, 68 N. W. 157; G. S. 1923 (2 Mason, 1927) § 9899.

■ In the same connection, evidence of oral or written admissions or declarations of the claimant that she is single or not married, made at a time when it is claimed the marriage existed, are admissible against her.

■ The claimant cannot present her own admissions or declarations that the marriage exists, made to third persons, not in the presence of or consented to by the other party to the alleged marriage contract.

■ In like manner, we believe it to be the general rule that declarations in denial of the marriage, made by the other party to third persons, not in the presence of or acquiesced in by the claimant, are inadmissible, unless admissible under some exception to the hearsay rule. Whigby v. Burnham, 135 Ga. 584, 69 S. E. 1114; Hubatka v. Maierhoffer, 81 N. J. L. 410, 79 A. 346; Marshall v. Carr, 271 Pa. 271, 114 A. 500; Thompson v. Nims, 83 Wis. 261, 53 N. W. 502, 17 L. R. A. 847.

Our own cases of State v. Worthingham, 23 Minn. 528; Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 A. S. R. 419; Heminway v. Miller, 87 Minn. 123, 91 N. W. 428; Le Suer v. Le Suer, 122 Minn. 407, 142 N. W. 593; In re Estate of Noser, 180 Minn. 463, 231 N. W. 199, and other cases, do not depart from the rules stated. What was said in the Hulett case, 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 A. S. R. 419, about it not being necessary to show cohabitation or the assumption of marital duties and obligations, has reference to the express written contract of marriage in praesenti, which was the matter in issue in that action. What was said in the Heminway case, 87 Minn. 123, 91 N. W. 428, about the admission of evidence in denial of the marriage, goes only to the extent of holding that a mortgage executed by the alleged husband, describing him as a single man, was admissible in evidence because the one claiming to be his wife signed it as a witness. Having by her signature attested the instrument, it was admissible against her.

■ There was received in evidence an application made by the deceased for a passport, wherein he stated that he was not a married man. This application, not having been made in the presence of or brought to the knowledge of the claimant, was hearsay and self-serving. It was error to receive it in evidence over claimant's objection and exception.

■ There was received in evidence an instrument in the form of a holographic will made by the deceased. In that instrument claimant was named as Mrs. Marie Chapman, and substantial bequests were made to her. She is not referred to as decedent's wife. It is conceded that the instrument was not so executed as to be a valid will or to be valid for any purpose. That being so, it was but a private written memorandum or declaration made by the deceased and inadmissible as hearsay and self-serving. Claimant was not shown to have had any knowledge of or any connection with the making of the instrument. In that connection, it was error also to refuse to give claimant's second request to charge, or the substance thereof, to the effect that the so-called holographic will was

of no legal effect, that neither claimant nor respondents could claim any part of decedent's estate under that instrument, and that it should be disregarded by the jury.

There were admitted in evidence certain hospital charts and records from a hospital in New York City, wherein decedent had been a patient, and in connection therewith certain statements made by him to hospital attendants. In these charts and records decedent. was described as a single man. The information for such statements was given by him. It is not shown that claimant knew of or had anything to do with the making of these charts or records. These documents, as well as the statements made by the decedent to the hospital attendants in connection therewith, we think were hearsay, self-serving, and inadmissible.

It is urged that these instruments and declarations were admissible as pedigree evidence. We do not believe that the rule as to pedigree evidence goes as far as to apply to self-serving declarations of a person that he is or is not a married man.

It is further argued that the evidence was admissible as part of the res gestae. The declarations and instruments were not made in claimant's presence or at a time when the parties were residing or cohabiting together. They were not made in connection with any marital relations or duties of the parties. There may be cases where the circumstances shown are such as to make statements of this kind a part of the res gestae, but the circumstances here shown are not sufficient to bring them within the res gestae rule.

Complaint is made of the exclusion of certain evidence as to the general reputation of the parties in the community where they resided as to their being married. Such evidence of general reputation, if proper foundation therefor is laid, is admissible. But whether proper foundation has been laid is a question largely for the trial court. We are not prepared to say there was error in this regard.

Income tax statements made regularly by the deceased during the time the marriage is claimed to have existed were received in evidence. In these statements decedent declared that he was not mar-

ried. We think these statements may be admissible as declarations against interest. A declaration by him in these statements that he was a married man might have resulted in the immediate saving of a substantial amount of tax money. A declaration therein that he was not married, if he in fact was a married man, resulted in the payment by him of substantial amounts of tax money in excess of what he would have been required to pay if he had been and had declared that he was married.

We do not find reversible errors in other respects. The evidence took a wide range. It could have been considerably shortened. But, for the errors hereinbefore pointed out, there should be a new trial.

Order reversed.

Upon Application For Reargument.

On September 16, 1932, the following opinion was filed:

Per Curiam.

Upon motion for reargument it is ordered that the last paragraph of the opinion, commencing with the sentence "We do not find reversible errors in other respects," be corrected so as to read:

"The evidence took a wide range. It could have been considerably shortened. We do not find reversible errors except as hereinbefore noted. The opinion will not foreclose consideration by the trial court of questions not expressly decided herein, and the opinion is not intended to disapprove or overrule what was decided in Shattuck v. Shattuck, 118 Minn. 60, 136 N. W. 409."

With this correction the motion for reargument is denied.