STEPHEN A. WILSON, APPELLEE, V. ETHEL L. WILSON, APPELLANT.

296 N. W. 766

FILED MARCH 7, 1941.   No. 30938.

*Albert S. Johnston,* for appellant.

*Beghtol, Foe & Rankin* and *Walter E. Nolte, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is a suit in which plaintiff prays for the annulment of his purported marriage to the defendant because of its invalidity. Defendant in her answer denies the invalidity of the marriage and prays for a divorce. The only question to be determined in this court is the correctness of the district court's finding that the defendant was the common-law wife of one J. W. Alexander at the time she purported to marry plaintiff and that her marriage to plaintiff was therefore a nullity.

The evidence shows that defendant was the stepdaughter of William J. Joyce, had adopted his name and had been known as Ethel Joyce during her youth. On March 17, 1914, she was married to R. F. Zimmer, with whom she established a residence at Pipestone, Minnesota. On Janu-

ary 11, 1921, R. F. Zimmer was granted a divorce from the defendant, the petition therefor reciting among other things that defendant's conduct with a gentleman friend was such as to warrant a decree of divorce. On September 15, 1921, one Mary E. Alexander obtained a divorce from John W. Alexander, the petition therefor stating in part that "during the past eighteen months the defendant has kept company with one Ethel Zimmer to such an extent that it has caused scandal in the neighborhood * * * causing this plaintiff great mental and physical suffering and affecting her health." The evidence given by John W. Alexander reveals that he considered himself engaged to marry Ethel Zimmer prior to their leaving Pipestone in the forepart of November, 1921. The evidence of defendant is to the effect that Alexander had asked her to marry him, but that she had refused him prior to the time they left Pipestone.

The record further shows that in the early part of November, 1921, defendant went with her mother and stepfather to Stephen, Minnesota. They were accompanied by J. W. Alexander and the Joyce children. It appears that Joyce and Alexander entered into a joint business venture in the operation of the Headquarters Hotel at Stephen. The local newspaper announced that J. W. Alexander had arrived to take charge of the hotel, accompanied by his wife and the latter's parents. One Arthur C. Carlson testified that he met Alexander and the Joyces on the day they arrived in Stephen and that Alexander introduced him to defendant as his wife, with the added statement that they were there on their honeymoon. He further testified that they lived in the same apartment in the hotel for two years as man and wife and that they were generally considered as man and wife during the whole period of their residence in Stephen.

The testimony of Louis Haupt discloses that he was operating a butcher shop in Stephen at the time defendant moved there. He says Alexander introduced defendant to him as his wife and that she was considered and known as "Mrs. Alexander" during the time she lived there. Dr.

A. A. Hass testified that he knew the defendant in Stephen as Mrs. Alexander. He testifies to her participation in an amateur play under the name of Ethel Alexander, a statement borne out by the newspaper accounts of the play at the time. Mr. Herbert I. Yetter, testifying from the records of the First National Bank of Stephen, says that a loan of $300 was negotiated by J. W. Alexander and Ethel Alexander during the period of their stay in Stephen. Ira H. Burhans, a lawyer at Stephen, testifies that he knew defendant at that place as Mrs. Ethel Alexander and that she was generally known as such during the period of her stay. He further testifies that he was often around the hotel and that the Alexanders lived in an apartment in the hotel during the time they were in Stephen. Other residents of Stephen testify that defendant was generally known as Mrs. J. W. Alexander during this period.

Newspaper items in the local paper corroborate this evidence. The issue of December 7, 1922, reports that Mrs. J. W. Alexander was called to her former home because of the illness of her grandmother. Under date of December 28, 1922, the local paper reported that Mr. and Mrs. J. W. Alexander entertained a number of young people at a dancing party. The publisher of the local paper at the time testifies that neither the defendant, nor any one in her behalf, made objection to the contents of these reports.

Defendant produced evidence directly contrary to that of the plaintiff. Defendant herself denies every portion tending to show the existence of the marriage relation. In addition thereto, John W. Alexander and the members of defendant's family deny the existence of any such relationship. It might be well to point out that defendant denies the truth of the allegations contained in the petition of divorce filed by R. F. Zimmer against her. She also denies any knowledge of the contents of the petition filed by Mary E. Alexander against John W. Alexander. She also claims that she never signed a note at the bank as Ethel Alexander, and that newspaper items identifying her as Ethel Alexander were never called to her attention until she was about to move

away and for that reason she made no attempt to have the errors corrected.

Common-law marriages are recognized in the state of Minnesota. In the early case of *Hulett v. Carey*, 66 Minn. 327, 69 N. W. 31, the supreme court of that state said: "It is mutual, present consent, lawfully expressed, which makes marriage. All that is necessary to render competent parties husband and wife is that they agree in the present tense to be such, no time being contemplated to elapse before the assumption of the status."

The proof required to establish a common-law marriage in Minnesota has been a subject of legislative action in that state. The applicable statute is as follows: "When the fact of marriage is required or offered to be proved before any court, evidence of the admission of such fact by the party against whom the proceeding is instituted, or of general repute, or of cohabitation as married persons, or any other circumstantial or presumptive evidence from which the fact may be inferred, shall be competent." Mason's Minnesota Statutes 1927, vol. 2, sec. 9899.

It is apparent, therefore, that legal sanction is given by the courts of Minnesota to a common-law marriage entered into between legally competent parties by means of a contract presently operative, whether it be oral or written, express or implied. There is no evidence in the present case of an express contract. The question before us is whether the admissions of the parties, the general repute, the cohabitation as married persons, and other circumstantial or presumptive evidence from which the fact may be inferred are sufficient to sustain a finding that a common-law marriage was entered into by the parties.

In the instant case there is evidence in the record of admissions made by Alexander in the presence of defendant that they were man and wife. The evidence of cohabitation as husband and wife and the assumption openly of marital duties and obligations are such as to reasonably sustain the inference that the parties agreed to become husband and wife. The evidence is very convincing that de-

fendant was generally reputed to be the wife of J. W. Alexander during the time they resided at Stephen, Minnesota. Defendant avers that this evidence creates a mere presumption of marriage which disappears when direct evidence on the subject is produced. We will not attempt a discussion of this subject generally because a reasonable interpretation of the Minnesota statute requires us to say that such evidence in that state is substantive evidence of marriage and not an ordinary rebuttable presumption. The proof of subsequent ceremonial marriages by each of the parties is evidence to be considered in determining whether a common-law marriage was entered into, but it is not conclusive. It still remains a question of fact to be judicially determined. The subsequent denial of a common-law marriage by the parties cannot destroy its validity any more than a subsequent denial of a ceremonial marriage can change the status created by it. Public policy forbids that the permanence of the marriage relation, even though entered into under common-law rules, should depend upon any such whimsical contingency. The evidence, if believed, is sufficient to meet the well-stated rules announced in *In re Estate of Lust,* 186 Minn. 405, 243 N. W. 443.

It is true that defendant and her relatives deny that the marriage relation existed. It is significant that every disinterested resident of Stephen, Minnesota, who testified gave evidence to the contrary. Defendant concealed from the plaintiff the fact of her previous marriage to Zimmer and did not have it shown in the application for the marriage license which authorized her marriage to him. Her venture with Alexander was likewise concealed and the explanations attempted after it was discovered do not appear to be convincing. At least, we must assume that the trial court came to this conclusion after hearing the witnesses, observing their demeanor on the stand and considering their interest in the result of the litigation. There being ample evidence in the record from which a marriage agreement can be inferred, we find no reason for this court to interfere with the judgment of the trial court.

AFFIRMED.